## UNITED STATES v. CHERRIE.

### No. 5512.

United States District Court
D. Wyoming.
April 21, 1950.
Order Affirmed July 31, 1950.

———◆———

J. J. Hickey, United States Attorney, and John S. Miller, Assistant United States Attorney, of Cheyenne, Wyo., for United States.

Walter B. Phelan, of Cheyenne, Wyo., for defendant.

T. BLAKE KENNEDY, District Judge.

The above entitled case is before the Court on a remand from the Circuit Court of Appeals. Cherrie v. United States, 10 Cir., 179 F.2d 94, 96. The situation here arises out of the following circumstances:

The defendant was charged with the transportation of falsely made securities interstate, under 18 U.S.C.A. § 415, now 18 U.S. C.A. § 2314, in which proceeding he was taken before a United States Commissioner and bound over to the United States District Court under a bond fixed by such commissioner. Subsequently he was brought into court and the matter of the charges under a proposed information was fully explained to him, together with his rights to have his case presented to a grand jury, which procedure, however, he could waive and consent to be prosecuted by an information filed by the United States Attorney, and in which event, should he desire to plead not guilty to the charge contained in the information he would have the same rights to a trial by jury as under an indictment. He thereupon elected to waive an indictment, which waiver was duly signed and placed on file. He was thereupon asked by the Court if he desired to plead to the charge contained in the information without the assistance of counsel, to which he was advised he was entitled, and thereupon he entered a plea of guilty. The case was then referred to the Probation Officer for the District and a report of that official was presented to the court and placed in the file of the defendant. Some time after said report was filed the defendant was brought before the Court and a sentence of three years was imposed on each of the four counts, to be served concurrently with each other.

The defendant was committed to the Leavenworth Penitentiary. While serving his sentence in said institution and some eight or nine months after being committed, he applied to the Court in forma pauperis for a copy of the court records in his case, which, by an order of the Court, were furnished him. Subsequently he filed in the court a motion to set aside and vacate the judgment and sentence, also in forma pauperis, upon the ground that the sentence and judgment was void and the Court was without jurisdiction to convict and sentence the defendant because he was not represented by counsel and did not voluntarily, intelligently, and competently waive that right at the time he signed a written waiver of indict-

ment, or at the time he entered a plea of guilty, or at the time sentence was imposed. The Court thereupon, in consideration of the motion, examined the complete record in the case, filed a written memorandum as to the reasons for his action in the premises, overruled the motion to set aside and vacate the judgment and sentence and entered an order accordingly. Thereupon the defendant filed a notice of appeal and the Court of its own motion, without the filing of the requisite statement of the defendant to proceed in forma pauperis, ordered the original record to be sent up to the Circuit Court of Appeals. In that court upon application of the defendant counsel was appointed to represent him upon said appeal and after the hearing the court filed its written opinion, followed by a mandate reversing this Court upon the ground that the files and records did not conclusively show that the defendant was not entitled to any relief and that the Court should have granted him a hearing on his motion in accordance with the provisions of 28 U.S.C.A. § 2255.

In communication with the defendant as to his desire for counsel at the hearing upon the motion to set aside and vacate the judgment and sentence, the defendant advised the Court that he would prefer the services of attorney Walter B. Phelan of the Laramie County Bar of Wyoming, and said attorney was thereupon appointed by the Court to represent the defendant at said hearing, which was subsequently arranged by agreement of counsel for April 3, 1950. The taking of testimony was completed and the case argued on said date. The procedure being one out of the ordinary type, a transcript of the testimony was ordered for both the Court and counsel and the case taken under advisement until such transcript should be filed. The completion of the transcript has caused some delay in the final disposition of the matter.

The gist of the opinion of the Court of Appeals seems to be that that court felt that when the trial court said to the defendant: "Are you ready to plead without the assistance of counsel to which you are entitled", that the full duty of the Court toward the defendant had not been discharged and that he should have been informed more fully as to his right under the constitution to have the assistance of counsel at the expense of the government in the event he had no funds with which to employ counsel.

So far as the record in this case is concerned there can be no doubt that it shows a waiver of the assistance of counsel, not only in a transcript of the proceedings, but one that was physically signed by the defendant at the time, and upon this point there is no diversity in the evidence taken upon this hearing. It was the thought of this Court in overruling the motion originally that upon such a record, coupled with the personal recollection of the trial judge as to the individual intelligence of the defendant, together with all the circumstances surrounding the situation, that there was an intelligent waiver of counsel by him. However, in the opinion of the Appellate Court this did not seem to suffice as establishing what is specified in the statute as a conclusive showing by the files and records of the case. Nevertheless, it is likewise gleaned from the opinion that there is no particular formula of words, phrases, statements, or inquiries, which would seem to form a framework for the guidance of trial judges. Some of the courts in quoted opinions have seemed to adopt an extreme theory and suggest the advising defendant of possible defenses or mitigating circumstances, in regard to which it is difficult for a trial court to conceive as a field for inquiry in a defendant before the Court for arraignment. However, the Appellate Court in the case at bar recognizes that there may be a graduated degree of inquiry and instruction because it is said in the opinion: "Of course, if the defendant is learned in the law, or it otherwise clearly appears that he knows his constitutional rights, a less inquiry may suffice", so that in the present situation the higher court has gone no further than to say that upon the face of the files and records it was not conclusively shown that Cherrie was not entitled to any relief and that for such reason he should have been entitled to a hearing on his motion. According to the terms of the motion and the statements of both counsel for the government and the defendant, in which the Court

concurs, the ultimate question to be determined here is as to whether or not the defendant intelligently waived his constitutional right to the assistance of counsel and to that phase of the case the Court's attention will be directed to what the evidence upon the hearing shows. An extended statement of the testimony taken upon the hearing (125 pages) would unduly extend this memorandum so that a limited summary of the evidence must suffice.

The defendant is a white man, born in California on August 28, 1910. His education consisted of the ordinary eighth grade course and two and one-half years in high school. His occupation after leaving school was largely that of an oilfield worker. Prior to the charge involved in the case at bar he had been arrested and punished by different methods four times and at least two of these were on bad check accusations, here likewise involved, and upon one of which in the state of Washington he was sentenced to a term of from two to twenty years in the Washington State Reformatory, being paroled at the expiration of serving eleven months of his sentence. All of the federal officials who testified upon the stand stated that he was a man of ordinary intelligence in action and appearance, and upon a mental examination at the institution where confined after sentence, it was testified he registered 108, which as interpreted meant that he was a little above the average standard of intelligence, the norm being based at 100. The defendant testified upon the stand that he understood the meaning of the Court's statements in regard to the waiving of an indictment. He likewise stated that he remembered the incident of the Court asking whether or not he was ready to plead without the assistance of counsel, to which he was entitled. He admitted signing statements when interviewed by two separate FBI agents in which it was stated that he did not have to make a statement and if he did so it might be used in court against him, and also that he was told at the time that he was entitled to the assistance of counsel. He further stated upon two or three occasions that he was guilty and desired to plead guilty and get

it over with and that in drawing fraudulent checks he had no idea he had broken a federal law, as it had never been his intention to break federal law. At no place in his testimony did he purport to say, even at the hearing upon the motion when represented by counsel, that he was not guilty of the crimes charged in the information. On the day that he was arraigned, waived an indictment and purported to waive the assistance of counsel, there were three or four other defendants likewise arraigned in advance of the arraignment of defendant and while he was present and nearby in the courtroom. The record shows that one of these defendants upon arraignment and the explanation of the right to the assistance of counsel, upon the Court being informed that he had no means of employing counsel, counsel was thereupon appointed for him. The defendant contends that he was so concerned with his own case that he paid no attention to the proceedings had with reference to other defendants. Also supporting the issues in this case were the written statements signed by the defendant and the testimony of the FBI agents who took the same, one of such agents testifying that the defendant said he did not want a lawyer but wanted to plead guilty and get it over with. To the same effect was the testimony of the United States Commissioner before whom the defendant was first taken. The defendant was told upon that occasion that if he wanted to have an attorney he would postpone the hearing but that only the judge of the court could furnish him with counsel at the expense of the government. The assistant district attorney in charge of the case when it came before the court (now United States Circuit Judge Pickett) testified that in all cases, and that he was sure in the present case he explained to the defendant the significance of a waiver of indictment and also told him that he was entitled to counsel if he was not able to employ one and didn't have funds, but that upon request the Court would appoint one for him. This occurred in the courtroom before the defendant was brought before the judge to have his legal rights explained to him. In substance, the defendant's testimony concerning his under-

standing of his right to the assistance of an attorney meant that he could have an attorney if he had the money to pay for one.

The foregoing is a somewhat sketchy outline of the evidence produced upon the hearing but in substance it fairly epitomizes the high spots of the testimony pertinent to the limited issue here involved. Under these circumstances it would be extremely difficult for the Court to say that there was not an intelligent and understanding waiver of counsel by the defendant when he was before the Court twice, once upon the arraignment and again at the time of sentence, when the matter of waiver of indictment and waiver of counsel was reiterated to him. His entire testimony above shows not only an average intelligence, but that he is possessed of reasoning powers above the average in analyzing the issues here involved and cleverly attempting to escape the full impact of the testimony adverse to him. To say that a defendant who frankly admitted his guilt of the charges laid in the information and still admits that he was guilty of that charge, even under the guidance of counsel, without any suggestion that he had any defense to the charge has suffered any injustice, and, simply because of a misunderstanding of his constitutional right to have counsel to assist him in his plea or defense would indeed seem to be a travesty on the time-honored and respected criminal procedure in our federal courts. Even the previous entanglements of the defendant with the law on the criminal side strongly suggest his familiarity with all the angles involved in answering criminal charges. It is at least a unique theory that any mature defendant in this era should hold the view that he could not employ a lawyer to represent him unless he had the Court's consent.

For the reasons stated the motion of the defendant to set aside and vacate judgment and sentence in the above entitled case will be overruled and denied and an order will be entered accordingly, together with an order directing the defendant be returned forthwith to the institution in which he is detained under the sentence of this Court.