# UNITED STATES *v.* HAYMAN.

No. 23. Argued October 15, 1951.—Decided January 7, 1952.

*Robert L. Stern* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General McInerney* and *James L. Morrisson.*

*Paul A. Freund,* acting under appointment by the Court, argued the cause and filed a brief for respondent.

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

In its 1948 revision of the Judicial Code, Congress provided that prisoners in custody under sentence of a fed-

eral court may move the sentencing court ot vacate, set aside or correct any sentence subject to collateral attack. 28 U. S. C. (Supp. IV) § 2255.[1]

---

[1] "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A motion for such relief may be made at any time.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

"A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

"The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

"An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

"An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."

Respondent, confined at the McNeil Island penitentiary in the Western District of Washington,[2] invoked this new procedure by filing a motion to vacate his sentence and grant a new trial in the District Court for the Southern District of California. That court had imposed a sentence of twenty years' imprisonment in 1947 for forging Government checks and related violations of federal law.[3]

In his motion, respondent alleged that he did not enjoy the effective assistance of counsel guaranteed defendants in federal courts by the Sixth Amendment. Specifically, he alleged that one Juanita Jackson, a principal witness against respondent at his trial and a defendant in a related case, was represented by the same lawyer as respondent. Respondent claims that he was not told of the dual representation and that he had no way of discovering the conflict until after the trial was over. It appeared from court records that Juanita Jackson testified against respondent after entering a plea of guilty but before sentence. Since a conflict in the interests of his attorney might have prejudiced respondent under these circumstances, the sentencing court and the court below, one judge dissenting, found that the allegations of respondent's motion warranted a hearing. Respondent's motion requested the issuance of an order to secure his presence at such a hearing.

For three days, the District Court received testimony in connection with the issues of fact raised by the motion. This proceeding was conducted without notice to respondent and without ordering the presence of respondent. On the basis of this *ex parte* investigation, the District Court found as a fact that respondent's counsel had also

---

[2] Respondent is now confined at Alcatraz in the Northern District of California.

[3] The judgment of conviction was affirmed by the Court of Appeals for the Ninth Circuit. 163 F. 2d 1018 (1947)

represented Juanita Jackson but that he "did so only with the knowledge and consent, and at the instance and request of [respondent]." Pursuant to this finding, the District Court entered an order denying respondent's motion to vacate his sentence and to grant a new trial.

On appeal to the Court of Appeals for the Ninth Circuit,[4] the majority, acting *sua sponte,* raised questions as to the adequacy and constitutionality of Section 2255. The court addressed itself to the provision that an application for a writ of habeas corpus "shall not be entertained" where the sentencing court has denied relief "unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." Considering that the proceedings in the District Court were proper under the terms of Section 2255, the court below held, one judge dissenting, that the Section 2255 procedure could not be adequate or effective in this case and, in the alternative, that the Section, in precluding resort to habeas corpus, amounted to an unconstitutional "suspension" of the writ of habeas corpus as to respondent.[5]

On rehearing below, and again in this Court, the Government conceded that respondent's motion raised factual issues which required respondent's presence at a hearing. The Court of Appeals, however, refused either to affirm the denial of respondent's motion or to accept the Government's concession and remand the case for a hearing with respondent present. Instead, it treated Section 2255 as a nullity and ordered respondent's motion dis-

[4] The appeal was timely. Appeals from orders denying motions under Section 2255 are governed by the civil rules applicable to appeals from final judgments in habeas corpus actions. See *Mercado* v. *United States,* 183 F. 2d 486 (C. A. 1st Cir. 1950).

[5] "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U. S. Const., Art. I, § 9, cl. 2.

missed so that respondent might proceed by habeas corpus in the district of his confinement. 187 F. 2d 456.

We granted certiorari in this case, 341 U. S. 930 (1951), to review the decision that Section 2255 must be considered a nullity, a holding that stands in conflict with cases decided in other circuits.[6] We do not reconsider the concurrent findings of both courts below that respondent's motion states grounds to support a collateral attack on his sentence and raises substantial issues of fact calling for an inquiry into their verity.

*First.* The need for Section 2255 is best revealed by a review of the practical problems that had arisen in the administration of the federal courts' habeas corpus jurisdiction.

Power to issue the writ of habeas corpus, "the most celebrated writ in the English law," [7] was granted to the federal courts in the Judiciary Act of 1789, 1 Stat. 73, 81–82. Since Congress had not defined the term "habeas corpus," resort to the common law was necessary.[8] Al-

---

[6] *Martin* v. *Hiatt,* 174 F. 2d 350 (C. A. 5th Cir. 1949), and *Barrett* v. *Hunter,* 180 F. 2d 510 (C. A. 10th Cir. 1950), have held expressly that Section 2255 is constitutional. Habeas corpus was also denied on the basis of Section 2255 in the following cases in other circuits without any suggestion that the Section was invalid: *Smith* v. *Reid,* 89 U. S. App. D. C. ——, 191 F. 2d 491 (C. A. D. C. Cir. 1951); *Meyers* v. *Welch,* 179 F. 2d 707 (C. A. 4th Cir. 1950); *Weber* v. *Steele,* 185 F. 2d 799 (C. A. 8th Cir. 1950). And in the following cases, other circuits remanded Section 2255 proceedings for hearing without suggesting that the Section was unconstitutional or inadequate: *United States* v. *Paglia,* 190 F. 2d 445 (C. A. 2d Cir. 1951); *Howard* v. *United States,* 186 F. 2d 778 (C. A. 6th Cir. 1951); *United States* v. *Von Willer,* 181 F. 2d 774 (C. A. 7th Cir. 1950).

[7] 3 Blackstone's Commentaries 129. The ancient origins of habeas corpus are traced in 9 Holdsworth, History of English Law (1926), 108–125; Jenks, The Story of Habeas Corpus, 18 L. Q. Rev. 64 (1902); Longsdorf, Habeas Corpus: A Protean Writ and Remedy, 8 F. R. D. 179 (1948).

[8] *Ex parte Bollman,* 4 Cranch 75, 93–94 (1807).

though the objective of the Great Writ long has been the liberation of those unlawfully imprisoned, at common law a judgment of conviction rendered by a court of general criminal jurisdiction was conclusive proof that confinement was legal. Such a judgment prevented issuance of the writ without more.[9]

In 1867, Congress changed the common-law rule by extending the writ of habeas corpus to ".ll cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States," and providing for inquiry into the facts of detention. 14 Stat. 385. In commenting on the 1867 Act this Court has said:

> "The effect is to substitute for the bare legal review that seems to have been the limit of judicial authority under the common-law practice, and under the act of 31 Car. II, c. 2, a more searching investigation, in which the applicant is put upon his oath to set forth the truth of the matter respecting the causes of his detention, and the court, upon determining the actual facts, is to 'dispose of the party as law and justice require.'

> . . . . . . .

> ". . . a prisoner in custody pursuant to the final judgment of a . . . court of criminal jurisdiction may have a judicial inquiry in a court of the United States into the very truth and substance of the causes of his detention, although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the . . . court to proceed to judgment against him. . . ." [10]

---

[9] *Ex parte Watkins,* 3 Pet. 193 (1830).

[10] *Johnson* v. *Zerbst,* 304 U. S. 458, 466 (1938) (federal prisoner); *Frank* v. *Mangum,* 237 U. S. 309, 330–331 (1915) (state prisoner).

Under the 1867 Act,[11] United States District Courts have jurisdiction to determine whether a prisoner has been deprived of liberty in violation of constitutional rights, although the proceedings resulting in incarceration may be unassailable on the face of the record. Under that Act, a variety of allegations have been held to permit challenge of convictions on facts *dehors* the record.[12]

One aftermath of these developments in the law has been a great increase in the number of applications for habeas corpus filed in the federal courts by state and federal prisoners. The annual volume of applications had nearly tripled in the years preceding enactment of Section 2255.[13] In addition to the problems raised by a large volume of applications for habeas corpus that are repetitious[14] and patently frivolous, serious administrative problems developed in the consideration of applications which appear meritorious on their face. Often, such ap-

---

[11] Now incorporated in 28 U. S. C. (Supp. IV) § 2241 *et seq.*

[12] *Moore* v. *Dempsey*, 261 U. S. 86 (1923) (mob domination of trial); *Mooney* v. *Holohan*, 294 U. S. 103 (1935) (knowing use of perjured testimony by prosecution); *Johnson* v. *Zerbst*, 304 U. S. 458 (1938) (no intelligent waiver of counsel in federal court); *Waley* v. *Johnston*, 316 U. S. 101 (1942) (coerced plea of guilty); *United States ex rel. McCann* v. *Adams*, 320 U. S. 220 (1943) (no intelligent waiver of jury trial in federal court); *House* v. *Mayo*, 324 U. S. 42 (1945) (denial of right to consult with counsel).

[13] During 1936 and 1937, an annual average of 310 applications for habeas corpus were filed in the District Courts and an annual average of 22 prisoners were released. By 1943, 1944 and 1945, however, the annual average of filings reached 845, although an average of only 26 prisoners were released per year. Figures from tables submitted to the Chairmen of the House and Senate Judiciary Committees. See pp. 215–216, *infra*.

These figures do not include the District Court for the District of Columbia where a similar increase in the volume of applications for habeas corpus had been reported. See *Dorsey* v. *Gill*, 80 U. S. App. D. C. 9, 14, 148 F. 2d 857, 862 (C. A. D. C. Cir. 1945).

[14] In several districts, up to 40% of all applications for habeas corpus filed during the years 1943, 1944 and 1945 were so-called

plications are found to be wholly lacking in merit when compared with the records of the sentencing court. But, since a habeas corpus action must be brought in the district of confinement,[15] those records are not readily available to the habeas corpus court.

*Walker* v. *Johnston,* 312 U. S. 275 (1941), illustrates a further practical problem presented when an application for habeas corpus alleges a meritorious claim not controverted by the records of the trial court. In the Northern District of California, Walker alleged that he had been denied counsel and coerced into pleading guilty by the United States Attorney, his assistant and a deputy marshal in the Northern District of Texas. The District Court for the Northern District of California refused to grant the writ after receiving *ex parte* affidavits from the federal officers denying the allegations. This Court reversed, finding that Walker's application raised material issues of fact and holding that the District Court must determine such issues by the taking of evidence, not by *ex parte* affidavits.[16] Granting the need for such a hearing to resolve the factual issues, the required hearing had to be held in the habeas corpus court in California although the federal officers involved were stationed in Texas and the facts occurred in Texas.[17]

These practical problems have been greatly aggravated by the fact that the few District Courts in whose territorial jurisdiction major federal penal institutions are lo-

repeater petitions. Speck, Statistics on Federal Habeas Corpus, 10 Ohio St. L. J. 337, 352 (1949). See also *Price* v. *Johnston,* 334 U. S. 266 (1948); *Dorsey* v. *Gill,* note 13, *supra;* Goodman, Use and Abuse of the Writ of Habeas Corpus, 7 F. R. D. 313 (1947).

[15] *Ahrens* v. *Clark,* 335 U. S. 188 (1948).

[16] Nor can the factual issues be heard before a commissioner. *Holiday* v. *Johnston,* 313 U. S. 342 (1941).

[17] It was to meet this problem that the Advisory Committee on the Federal Rules of Criminal Procedure proposed that a motion for new trial on the ground that a defendant has been deprived of a

cated were required to handle an inordinate number of habeas corpus actions far from the scene of the facts, the homes of the witnesses and the records of the sentencing court solely because. of the fortuitous concentration of federal prisoners within the district.[18]

. *Second.* The Judicial Conference of the United States,[19] addressing itself to the problems raised by the increased habeas corpus business in 1942, created a committee of federal judges "to study the entire subject of procedure on applications for habeas corpus in the federal courts." [20] At the next session of the Conference, the Committee on Habeas Corpus Procedure submitted its report. After extensive consideration, the Judicial Conference recom-

constitutional right might be made at any time after judgment. Report of the Advisory Committee (1944) Rule 35. This proposal was not included in the Rules as finally promulgated. See Dession, The New Federal Rules of Criminal Procedure: II, 56 Yale L. J. 197, 233 (1947).

[18] Of all habeas corpus applications filed by federal prisoners, 63% were filed in but five of the eighty-four District Courts. And, although habeas corpus trials average only 3% of all trials in all districts, the proportion of habeas corpus trials in those five districts has run from 20% to as high as 65% of all trials conducted in the district.

The basic data, compiled by Speck, note 14, *supra*, covers the six years immediately preceding enactment of Section 2255 in 1948. Again, the figures do not include the District Court for the District of Columbia. The five districts are: Northern California (Alcatraz); Northern Georgia (Atlanta); Kansas (Leavenworth); Western Washington (McNeil Is.); and Western Missouri (Springfield Medical Center).

[19] The Judicial Conference of the United States, established by Congress in 1922, 42 Stat. 838, is a conference of the chief judges of the judicial circuits and The Chief Justice of the United States. It is the function of the Judicial Conference to make a comprehensive survey of the condition of business in the courts of the United States. Its proceedings, together with its recommendations for legislation, are submitted to Congress. 28 U. S. C. (Supp. IV) § 331.

[20] Report of the Judicial Conference (1942) 18.

mended adoption of two proposed bills, a "procedural bill" containing provisions designed to prevent abuse of the habeas corpus writ and a "jurisdictional bill," Section 2 of which established a procedure whereby a federal prisoner might collaterally attack his conviction in the sentencing court.[21] The Judicial Conference repeatedly reaffirmed its approval of this forerunner of Section 2255.[22]

In 1944, the two bills approved by the Judicial Conference were submitted to the Congress on behalf of the Conference. In the letter of transmittal and accompanying memorandum, Section 2 of the "jurisdictional bill" was described as requiring prisoners convicted in federal courts to apply by motion in the sentencing court "instead of making application for habeas corpus in the district in which they are confined." [23] At the request of the Chairmen of the House and Senate Judiciary Committees, a "Statement" describing the necessity and purposes of the bills was submitted to Congress on behalf of the Judicial

---

[21] Report of the Judicial Conference (1943) 22–24.

[22] Report of the Judicial Conference (1944) 22; id. (1945) 18.

[23] Letter of transmittal, dated March 2, 1944. The complete description of Section 2 of the jurisdictional bill in the memorandum is as follows:

"Section two of the jurisdictional bill refers to prisoners who have been convicted in a federal court, and requires them, instead of making application for habeas corpus in the district in which they are confined, to apply by motion to the trial court to vacate or set aside the judgment. That court is then required to grant a prompt hearing and render its decision on the motion, from which an appeal lies to the circuit court of appeals. If it appears that it is not practicable for the prisoner to have his motion determined in the trial court because of his inability to be present at the hearing, 'or for other reasons,' then he has the right to make application to the court in the district where he is confined. Such an instance might occur where a dangerous prisoner, who had been convicted in the Southern District of New York, was confined in Alcatraz Penitentiary. The bill expressly provides that no circuit or district judge of the United States shall entertain an application for a writ in behalf of any prisoner

216.

Conference Committee on Habeas Corpus Procedure. In
this Statement, Congress was furnished statistics showing
in detail the increased volume of applications for habeas
corpus.[24] The Statement, stressing the practical difficul-
ties encountered in hearings held in the district of con-
finement rather than the district of sentence, described
Section 2 of the "jurisdictional bill" as follows:

> "This section applies only to Federal sentences. It
> creates a statutory remedy consisting of a motion
> before the court where the movant has been con-
> victed. The remedy is in the nature of, but much

unless it appears that his right to discharge cannot be determined by
motion made in the trial court."

As submitted to Congress, Section 2 of the jurisdictional bill
provided:

"No circuit or district judge of the United States shall entertain an
application for writ of habeas corpus in behalf of any prisoner who is
authorized to apply for relief by motion pursuant to the provisions
of this section, unless it appears that it has not been or will not be
practicable to determine his rights to discharge from custody on
such a motion because of his inability to be present at the hearing
on such motion, or for other reasons. Where the prisoner has sought
relief on such a motion, if the circuit or district judge concludes that
it has not been practicable to determine the prisoner's rights on such
motion, the findings, order, or judgment on the motion shall not be
asserted as a defense to the prisoner's application for relief on habeas
corpus."

H. R. 4232 and S. 1452, 79th Cong., 1st Sess. (procedural bill);
H. R. 4233 and S. 1451, 79th Cong., 1st Sess. (jurisdictional bill) were
introduced in 1945, but no action was taken by Congress.

H. R. 6723, 79th Cong., 2d Sess., introduced as a substitute for
the jurisdictional bill, would have placed a time limit within which
motion to vacate sentences could be filed by federal prisoners. The
substitute bill was considered by the Judicial Conference, and ordered
circulated among the federal judges. Report of the Judicial Con-
ference (1946) 21. No action was taken by Congress on this sub-
stitute bill.

[24] This statistical data is summarized in note 13, *supra*.

broader than, *coram nobis.* The motion remedy broadly covers all situations where the sentence is 'open to collateral attack.' As a remedy, it is intended to be as broad as habeas corpus." [25]

[25] The Statement, prepared by Circuit Judge Stone and approved by Chief Justice Stone, described the practical considerations as follows:

"Most habeas corpus cases raise fact issues involving the trial occurrences. or the alleged actions of judges, United States attorneys, marshals or other court officials. Obviously, it involves interruption of judicial duties if the trial judge, the United States attorney, the court clerk or the marshal (one or all of them) are required to attend the habeas corpus hearing as witnesses. Such attendance is sometimes necessary to refute particular testimony which the prisoner may give and, obviously, such attendance is the safest course. This is so because experience has demonstrated that often petitioner will testify to anything he may think useful, however false; and, without the witnesses present to refute such, he is encouraged to do so and may make out a case for discharge from merited punishment. Some realization of the possible extent of this burden on Court officials may be gained from the bare statement that, while convictions occur in all of the Districts throughout the country, federal prisoners are confined in a very small number of penal institutions; and habeas corpus must now be brought in the District where the petitioner is confined. Even if the testimony of these officials is taken by deposition, the interference and interruption is merely lessened in degree and the above danger is risked.

"The main disadvantages of the motion remedy are as follows: The risk during or the expense of transporting the prisoner to the District where he was convicted; and the incentive to file baseless motions in order to have a 'joy ride' away from the prison at Government expense.

"Balancing these, as well as less important, considerations, the Conference is of opinion that the advantages outweigh and that the motion remedy is preferable. As to the risk (escape or delivery) while transporting the prisoner to the District of conviction, the difference is only one of degree—of distance and, therefore, of opportunity. As to the expense, it is highly probable that it would be more expensive for the Government witnesses to go from the District where sentence was imposed and return than for the prisoner

While the bills proposed by the Judicial Conference were pending, the Committee on Revision of the Laws of the House of Representatives had drafted a bill revising the entire Judicial Code. Portions of this bill dealing with habeas corpus were drafted to conform with the bills approved by the Judicial Conference,[26] including Section 2255, modeled after Section 2 of the "jurisdictional bill" approved by the Judicial Conference. According to the Reviser's Note on Section 2255:

> "This section restates, clarifies and simplifies the procedure in the nature of the ancient writ of error coram nobis. It provides an expeditious remedy for correcting erroneous sentences without resort to habeas corpus. It has the approval of the Judicial Conference of the United States. Its principal provisions are incorporated in H. R. 4233, Seventy-ninth Congress [the so-called jurisdictional bill]."[27]

After the House of Representatives had passed the bill revising the Judicial Code, the Judicial Conference reconsidered the two bills drafted by its Committee on Habeas Corpus Procedure. The Conference noted the importance of securing legislation along the lines of its proposals, approved the habeas corpus chapter of the Judicial Code revision bill with two amendments not affecting Section 2255 and directed that Congress be informed of

to be brought to such District and returned. As to the incentive to file petitions, the difference is between a longer and a shorter trip to the Court. It is thought that the provision in Section 2 providing for habeas corpus (in the District of confinement) where it is not 'practicable to determine his rights' . . . on such a motion' will furnish a sufficient discretion in the judge or court before whom habeas corpus is filed to evaluate and defeat the above 'disadvantages' to a large degree." P. 8.

[26] H. R. Rep. No. 2646, 79th Cong., 2d Sess. (1946) 7.

[27] H. R. Rep. No. 2646, 79th Cong., 2d Sess. (1946) A172; H. R. Rep. No. 308, 80th Cong., 1st Sess. (1947) A180.

the interest of the Conference in the enactment of the habeas corpus provisions of the revised Judicial Code.[28]

This review of the history of Section 2255 shows that it was passed at the instance of the Judicial Conference to meet practical difficulties that had arisen in administering the habeas corpus jurisdiction of the federal courts. Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions. On the contrary, the sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum.[29]

*Third.* The crucial issue of fact presented by respondent's motion under Section 2255 was whether his attorney appeared as counsel for Juanita Jackson "with the knowledge and consent" of respondent. The Court of Appeals found, and the Government now agrees, that respondent's presence at a hearing on this issue is required if the Section 2255 procedure is to be adequate and effective in this case. In holding that Section 2255 should be treated as a nullity in this case, the court below found that the Section contemplated and permitted the *ex parte* investigation conducted by the District Court without notice to respondent and without respondent's presence.

We do not find in Section 2255 the disturbing inadequacies found by the court below. The issues raised by respondent's motion were not determined by the "files and records" in the trial court. In such circumstances, Section 2255 requires that the trial court act on the motion as follows: ". . . cause notice thereof to be served upon the United States attorney, *grant a prompt hearing*

---

[28] Report of the Judicial Conference (1947) 17–18. See S. Rep. No, 1559, 80th Cong., 2d Sess. (1948) 8–10.

[29] Parker, Limiting the Abuse of Habeas Corpus, 8 F. R. D. 171, 175 (1948). Judge Parker served as Chairman of the Judicial Conference Committee on Habeas Corpus Procedure.

*thereon,* determine the issues and make findings of fact and conclusions of law with respect thereto." (Emphasis supplied.) In requiring a "hearing," the Section "has obvious reference to the tradition of judicial proceedings." [30] Respondent, denied an opportunity to be heard, "has lost something indispensable, however convincing the *ex parte* showing." [31] We conclude that the District Court did not proceed in conformity with Section 2255 when it made findings on controverted issues of fact relating to respondent's own knowledge without notice to respondent and without his being present.

The court below also held that the sentencing court could not hold the required hearing because it was without power to order the presence of a prisoner confined in another district. This want of power was thought to follow from our decision in *Ahrens* v. *Clark,* 335 U. S. 188 (1948), where we held that the phrase "within their respective jurisdictions" in the habeas corpus statute [32] required the presence of the prisoner within the territorial jurisdiction of the District Court as a prerequisite to his filing an application for habeas corpus. This is not a habeas corpus proceeding. The sentencing court in the Southern District of California would not be issuing an original writ of habeas corpus to secure respondent's presence from another district. Issuance of an order to produce the prisoner is auxiliary to the jurisdiction of the trial court over respondent granted in Section 2255 itself and invoked by respondent's filing of a motion under that Section.

The very purpose of Section 2255 is to hold any required hearing in the sentencing court because of the inconvenience of transporting court officials and other nec-

---

[30] See *Morgan* v. *United States,* 298 U. S. 468; 480 (1936).

[31] *Snyder* v. *Massachusetts,* 291 U. S. 97, 116 (1934).

[32] 28 U. S. C. § 452 (now 28 U. S. C. (Supp. IV) § 2241).

essary witnesses to the district of confinement. The District Court is not impotent to accomplish this purpose, at least so long as it may invoke the statutory authority of federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." [33] An order to. secure respondent's presence in the sentencing court to testify or otherwise prosecute his motion is "necessary or appropriate" [34] to the exercise of its jurisdiction under Section 2255 and finds ample precedent in the common law. [35] The express language of Section 2255 that a "court may entertain and determine such motion without requiring the production of the prisoner at the hearing" negatives any purpose to leave the sentencing court powerless to require production of the prisoner in an appropriate case. [36] Other federal courts conducting Section 2255

---

[33] 28 U. S. C. (Supp. IV) § 1651 (a).

[34] See *Adams* v. *United States ex rel. McCann,* 317 U. S. 269, 272–273 (1942).

[35] In determining what auxiliary writs are "agreeable to the usages and principles of law," we look first to the common law. See *Price* v. *Johnston,* 334 U. S. 266, 281 (1948). In addition to "the great and efficacious writ," *habeas corpus ad subjiciendum,* other varieties of the writ were known to the common law. Blackstone described the writs of habeas corpus *"ad prosequendum, testificandum, deliberandum,* etc.; which issue when it is necessary to remove a prisoner, in order to prosecute or bear testimony in any court, or to be tried in the proper jurisdiction wherein the fact was committed." 3 Blackstone's Commentaries 129–130. See *Ex parte Bollman,* 4 Cranch 75, 97–98 (1807).

[36] It is argued that the reference to the common law writ of error *coram nobis* in the Reviser's Note on Section 2255 shows an intention to adopt an *ex parte* investigation in lieu of a hearing in the usual sense. Congress did not adopt the *coram nobis* procedure as it existed at common law, the Reviser's Note merely stating that the Section 2255 motion was "in the nature of" the *coram nobis* writ in the sense that a Section 2255 proceeding, like *coram nobis,* is an independent action brought in the court that entered judgment. Note

proceedings have not encountered difficulties in securing the presence of prisoners confined outside the district.[37]

The existence of power to produce the prisoner does not, of course, mean that he should be automatically produced in every Section 2255 proceeding. This is in accord with procedure in habeas corpus actions.[38] Unlike the criminal trial where the guilt of the defendant is in issue and his presence is required by the Sixth Amendment, a proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction.

---

27, *supra.* Further, it by no means follows that an issue of fact could be determined in a *coram nobis* proceeding without the presence of the prisoner, the New York Court of Appeals recently holding that his presence was required under the common law. *People v. Richetti,* 302 N. Y. 290, 297–298, 97 N. E. 2d 908, 911–912 (1951).

[37] Among the reported cases are: *United States v. Parker,* 91 F. Supp. 996 (M. D. N. C. 1950), aff'd, 184 F. 2d 488 (C. A. 4th Cir. 1950); *Jones v. United States,* 179 F. 2d 303 (C. A. 4th Cir. 1950); *Sturgeon v. United States,* 187 F. 2d 9 (C. A. 5th Cir. 1951); *Foster v. United States,* 184 F. 2d 571 (C. A. 5th Cir. 1950); *Woolard v. United States,* 83 F. Supp. 521 (N. D. Ala. 1949), aff'd, 178 F. 2d 84 (C. A. 5th Cir. 1949); *United States v. Jones,* 177 F. 2d 476 (C. A. 7th Cir. 1949); *Cherrie v. United States,* 179 F. 2d 94 (C. A. 10th Cir. 1949) (rev'd for hearing), 90 F. Supp. 261 (D. Wyo. 1950), aff'd, 184 F. 2d 384 (C. A. 10th Cir. 1950); *Hurst v. United States,* 180 F. 2d 835 (C. A. 10th Cir. 1950); *Moss v. United States,* 177 F. 2d 438 (C. A. 10th Cir. 1949); *Doll v. United States,* 175 F. 2d 884 (C. A. 10th Cir. 1949); *Payne v. United States,* 85 F. Supp. 404 (M. D. Pa. 1949); *United States v. Bowen,* 94 F. Supp. 1006 (N. D. Ga. 1951); *United States v. Kratz,* 97 F. Supp. 999 (D. Nebr. 1951).

The Court of Appeals for the Second Circuit has ordered in a Section 2255 proceeding that a "hearing" be held in open court with the prisoner present and free to testify. *United States v. Paglia,* 190 F. 2d 445, 448 (1951).

[38] *Walker v. Johnston, supra,* at 284. According to the Reviser's Note, 28 U. S. C. (Supp. IV) § 2243, governing the requirements for presence of a prisoner in habeas corpus actions, was drafted to conform with the practice described in the *Walker* case.

Whether the prisoner should be produced depends upon the issues raised by the particular case. . Where, as here, there are substantial issues of fact as to events in which the prisoner participated, the trial court should require his production for a hearing.[39]

*Fourth.* Nothing has been shown to warrant our holding at this stage of the proceeding that the Section 2255 procedure will be "inadequate or ineffective" if respondent is present for a hearing in the District Court on remand of this case. In a case where the Section 2255 procedure is shown to be "inadequate or ineffective," the Section provides that the habeas corpus remedy shall remain open to afford the necessary hearing.[40] Under such circumstances, we do not reach constitutional questions. This Court will not pass upon the constitutionality of an act of Congress where the question is properly presented unless such adjudication is unavoidable,[41] much less anticipate constitutional questions.[42]

We conclude that the District Court erred in determining the factual issues raised by respondent's motion under Section 2255 without notice to respondent and without his presence. We hold that the required hearing can be afforded respondent under the procedure established in Section 2255. The Court of Appeals correctly reversed

---

[39] See *Barrett* v. *Hunter*, 180 F. 2d 510, 514 (C. A. 10th Cir. 1950).

[40] If Section 2255 had not expressly required that the extraordinary remedy of habeas corpus be withheld pending resort to established procedures providing the same relief, the same result would have followed under our decisions. *Stack* v. *Boyle*, 342 U. S. 1, 6–7 (1951); *Johnson* v. *Hoy*, 227 U. S. 245 (1913); *Ex parte Royall*, 117 U. S. 241 (1886).

[41] *Alma Motor Co.* v. *Timken-Detroit Axle Co.*, 329 U. S. 129 (1946); *Ashwander* v. *Tennessee Valley Authority*, 297 U. S. 288, 347 (1936) (Brandeis, J., concurring).

[42] *Rescue Army* v. *Municipal Court*, 331 U. S. 549, 568–569 (1947); *Ashwander* v. *Tennessee Valley Authority*, note 41, *supra*, at 346–347, and cases cited therein.

the order of the District Court but should have remanded the case for a hearing under Section 2255 instead of ordering that respondent's motion be dismissed. Accordingly, we vacate the judgment of the Court of Appeals and remand the case to the District Court for further proceedings in conformity with this opinion.

*Vacated and remanded.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS concur in the result.

MR. JUSTICE MINTON took no part in the consideration or decision of this case.