**SLACK v. UNITED STATES.**

No. 11684.

United States Court of Appeals
Sixth Circuit.

April 4, 1953.

Irving Harris, Cincinnati, Ohio, Alfred D. Slack, Atlanta, Ga., on brief, for appellant.

Ferdinand Powell, Jr., Knoxville, Tenn., John H. Reddy, Knoxville, Tenn., on brief, for appellee.

Before SIMONS, Chief Judge, and MARTIN and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

This is the second appeal by Alfred Dean Slack from a denial of his motion in the United States District Court for the Eastern District of Tennessee to vacate a judgment of conviction and a sentence of fifteen years' imprisonment there imposed upon his plea of guilty to the violation of Section 34, Title 50, United States Code [1946 Ed.], by conspiring with others to violate sub-section (a) of Section 32, Title 50, United States Code.[1]

1. "If two or more persons conspire to violate the provisions of sections 32 or 33 of this title, and one or more of such persons does any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be punished as in said sections provided in the case of the doing of the act the accomplishment of which is the object of such conspiracy. Except as above provided conspiracies to commit offenses under this chapter shall be punished as provided by * * *." Section 88 of Title 18. Ch. 30, Title I, Sec. 4, 40 Stat. 219, June 15, 1917.

Sec. 32. "Whoever, with intent or reason to believe that it is to be used to the injury of the United States or to the advantage of a foreign nation, communicates, delivers, or transmits, or attempts to, or aids or induces another to, communicate, deliver, or transmit, to any foreign government, or to any faction or party or military or naval force within a foreign country, whether recognized or unrecognized by the United States, or to any representative, officer, agent, employee, subject, or citizen thereof, either directly or indirectly, any document, writing, code book, signal book, sketch, pho-

On the first appeal, this court, on motion of the United States Attorney, remanded the cause for a new hearing under the provisions of and in accordance with the procedure established in Section 2255, Title 28, United States Code. The District Attorney based his motion, which was granted, upon the fact that appellant had no notice of and was not present at the hearing and did not have the effective service of counsel. We agreed with the District Attorney that the case fell squarely within the holding of the Supreme Court in United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, which necessitated the remand. See Slack v. United States, 6 Cir., 196 F.2d 493.

At the hearing held in the district court pursuant to our mandate, appellant was ably represented by a skillful and combative attorney, appointed by the court, and was given full and adequate opportunity to present evidence in support of his motion to vacate the sentence. The hearing consumed several days and has been recorded in a typewritten transcript of the proceedings, setting forth the testimony in question and answer form totaling 534 pages, which has been carefully read and duly considered. Appellant himself testified at length. His wife also testified in his behalf.

The Government put on the witness stand three special agents of the Federal Bureau of Investigation, a former special agent of that bureau, the two attorneys appointed to advise with and represent appellant before and at the arraignment when he pleaded guilty, an assistant United States Attorney, and a former United States Attorney for East Tennessee. These witnesses were rigidly cross-examined by appellant's attorney. Numerous exhibits were introduced in evidence.

After the proceedings had been concluded, the District Judge, who with obvious patience had given a considerate hearing to the evidence introduced and to the contentions of petitioner and his attorney, filed a well prepared opinion, expressly adopted as his findings of fact and conclusions of law. It was adjudged that the motion of appellant to vacate or set aside the judgment and sentence be overruled and denied on its merits.

In his opinion, the District Judge summarized and rejected the argument of appellant that his constitutional rights had been denied and infringed from the time he was first approached for questioning by agents of the Federal Bureau of Investigation until he was committed to prison under judgment of sentence. He had argued: that he was arrested without warrant, questioned unlawfully, and transferred from the State of New York to Knoxville, Tennessee, without having the benefit of counsel to which he was entitled; that he was neglected by the attorneys appointed to represent him in Knoxville, and denied his request for substitution of attorneys; that he was kept under suicide guard and questioned repeatedly by the F. B. I. Agents; that he was advised by his counsel that his case would be thrown out of court and subsequently told by the lawyer that a deal had been made with an assistant United States Attorney whereby, upon a plea of guilty, appellant would be sentenced to only ten years' imprisonment.

As pointed out by the United States District Court, the record shows that in all proceedings in New York appellant had been appropriately advised of his constitutional rights by the officials who questioned him, and had understandingly and voluntarily waived his right not to be questioned as to the disclosures which he made and his right to have the benefit of counsel before voluntarily being transferred to Knoxville, Tennessee. He admitted on the witness stand his signature to the statements which he voluntarily made in writing. At his request upon arriving in Knoxville, the Court shortly thereafter appointed able and highly respected members of the bar to represent him and, while he was kept under close surveillance during his detention in prisons at Greeneville and Knoxville, there was no

tograph, photographic negative, blue print, plan, map, model, note, instrument, appliance, or information relating to the national defense, shall be punished by im-

prisonment for not more than twenty years * * *." [See 1948 Revised Criminal Code, 18 U.S.C.A. § 794].

evidence whatever that his decision to plead guilty was in any degree attributable to this circumstance. The District Court found further that, upon advice of counsel, appellant had responded voluntarily to frequent questioning by agents of the Federal Bureau of Investigation; and that all his admissions were voluntarily made with knowledge that his statements might be used against him, but that they were not so used, there being no evidence that prior statements made by him were a coercive factor in inducing him to plead guilty. It was explained by the District Judge that he had assumed that appellant had no further complaints of inattention on the part of his attorneys after their conference with him, and that the reply of the Judge to appellant's letter of complaint gave notice of this fact. The opinion asserted further that the District Judge had not received a second letter alleged by appellant to have been written by him requesting substitution of counsel.

The Judge pointed to the testimony of appellant's former attorneys, showing that appellant had been represented by counsel within the meaning of the Constitution and that his plea of guilty could not be attributed to lack of counsel or to advice of counsel in any sense lacking in fidelity, care or understanding. It had been made plain to appellant that the recommendation of a ten-year sentence by the District Attorney would not be binding upon the Court and might be rejected; and the defendant had expressed his determination to take a chance on the rejection by the Court of the recommendation of the Government's attorney. It was found upon the record that the defendant had entered an unqualified plea of guilty and that he had had ample time within which to withdraw his plea if he had so desired, but that he had not expressed any wish to do so. He entered his plea of guilty on September 18, 1950, and was sentenced on September 22, 1950.

All the foregoing findings of fact by the District Court were amply supported by substantial evidence and were certainly not clearly erroneous.

The District Judge received from the defendant a letter dated September 19, 1950, wherein he stated: "The culmination and the action for which I am legally liable now was a report on the manufacture of the explosive produced in Kingsport in 1943." He wrote that this explosive had been known to scientists since 1899; that it had been used by the Germans in World War One and that its composition, properties and method of manufacture had been described in 1925 in the Journal of The American Chemical Society. The opinion states that this letter, the contents of which were brought to the attention of appellant's attorney prior to his plea of guilty, is made in the present proceeding the cornerstone of his motion to vacate the judgment of conviction and sentence.

The District Judge analyzed the case as reducing to the crucial question of whether the conspiratorial actions of the defendant were a violation of the law, it being the theory of appellant on his motion to vacate that furnishing something already known or available to the recipient from public sources does not constitute furnishing information within the meaning of the federal statute upon which the indictment was based. The Court stated, upon the authority of United States v. Heine, 2 Cir., 151 F.2d 813, that "as an abstract proposition this theory would undoubtedly have merit, as where the recipient by his own efforts could have gleaned the information from public sources"; but that there was no merit in the contention of appellant where, as in the case at bar, the thing furnished reveals facts not intrinsic in the thing itself.

The District Court reasoned thus: "In all probability, the recipient of information relative to the formula of the explosive known as RDX could have obtained the formula from public sources, or already had it at his disposal. The prisoner furnished for transmittal to the Russians a report on the manufacture of RDX. He testified that he obtained his information from public sources, mainly, if not entirely, while he was in Cincinnati. But at the time he furnished the report to his co-conspirator he was employed within what by common knowledge was a closely guarded munitions plant where an explosive was being manufactured. He was familiar with certain

phases of the manufacture of the explosive. The report he furnished is not here in evidence, but it is a certainty that he had opportunity to check matters of report obtained outside with those observed inside the plant at Kingsport. It is in evidence that under cover of a pass issued to him as an employee he obtained a sample of the explosive which he knew or assumed to be RDX from a storage department within the plant, which sample he furnished to his co-conspirator. From this sample the recipient could have determined whether the product was, or was not, RDX. Thus, in furnishing the sample, he furnished the means by which through chemical analysis it could be determined what in fact was being manufactured in the Kingsport munitions plant, known as the Holston Ordnance Works. This was the furnishing of information relating to the national defense and was a violation of the espionage law set out in the Code sections of the indictment. See Gorin v. United States, 312 U.S. 19 [61 S.Ct. 429, 85 L.Ed. 488]."

The opinion of the trial court concluded with the assertion that, upon cross-examination, appellant had admitted stating to his attorneys that, if doing the things hereinabove set forth constituted a violation of law, he was guilty; that, when arraigned, appellant had entered an unqualified plea of guilty which he had time and opportunity to repudiate, but did not; that the act committed by him fell within the inhibitions of the espionage statute; and that, examined in retrospect, his plea of guilty must be held to have been a voluntary and understanding plea. The final conclusion of the District Court was that no constitutional right of appellant had been denied or infringed; and that he had received every requisite of due process of law guaranteed by the Constitution. Accordingly, appellant's motion to vacate the judgment of conviction and sentence was overruled.

On this appeal, a competent attorney was appointed by this court to represent the appellant, a highly intelligent and well educated man who also filed a brief in his own behalf. The crux of the argument made in behalf of appellant is that he did not have the effective assistance of counsel as guaranteed by the Sixth Amendment to the Federal Constitution, in that he was not properly advised by counsel originally appointed to represent him in the trial court of the exact nature and meaning of the charge laid against him in the indictment; and that had he been properly informed, he would not have pleaded guilty. The point emphasized is that had he been aware of the interpretation placed upon the espionage law by the Court of Appeals for the Second Circuit in United States v. Heine, 151 F.2d 813, appellant would not have pleaded guilty.

The argument is not well grounded, for the reason that the Heine case is readily distinguishable from that at bar. It becomes immaterial, therefore, whether or not this court agrees with the doctrine laid down in that case, which we do say, however, is open to serious challenge.

In the Heine case, it was held that prohibition under the Espionage Act, Sections 32 and 34, Title 50, U.S.C.A., against the dissemination of information relating to the national defense was not inclusive of information from sources lawfully accessible to everyone and, therefore, that a German-born American citizen who was engaged in collecting and transmitting to Germany all available information about American production of airplanes, so that Germany should be advised of that feature of American defense in event of war, could not be lawfully convicted of violating the Espionage Act.

Here, the record shows that the attorney for appellant was told by him that he had furnished Harry Gold with a confidential report in writing concerning the manufacture of the explosive RDX in the Holston Works at Kingsport. This munitions plant was carefully guarded and screened against disclosure of the product being manufactured there and in what quantity it was being manufactured. Moreover, appellant admitted that he stole and passed along to this spy for Russia a specimen of the explosive being manufactured in that closely guarded plant. The sample of the end product there manufactured, showing as

it did precisely what was being produced, was secret information not obtained from public domain of knowledge. Appellant has stressed the proposition that the information which he passed along to his co-conspirator Gold was derived from sources of public information. This is utterly inconsistent with his prior statement to his attorney that he had furnished Gold a sample of the product and a confidential report in writing on the secret manufacture of the explosive in the Holston Ordnance Works.

It seems manifest that the proposition now advanced by appellant is a concocted afterthought. Moreover, the argument of appellant will not stand up in the light of the opinion of the Supreme Court in Gorin v. United States, 312 U.S. 19, 30, 61 S.Ct. 429, 85 L.Ed. 488, where it was made plain that the evil which the Espionage Act punishes is obtaining for or furnishing to a foreign government "guarded information," either to the damage of our nation or to the gain of another country.

The attack which appellant makes upon the competent and conscientious counsel originally appointed by the District Judge to advise him of his rights and to represent him upon his arraignment, and thereafter, evinces the ingratitude which might be expected of a traitor to his country—a man obviously without principle or honor. Ray Jenkins, the chief counsel appointed to assist appellant in his defense, has practiced law in Tennessee for more than thirty years and has appeared most frequently as the advocate of persons on trial for serious offenses in the criminal courts, both state and federal. He has earned and enjoys a fine reputation for professional ethics and personal integrity, and is generally regarded as one of the ablest trial lawyers in Tennessee. Kyle King of Greeneville, Tennessee, the junior counsel appointed by the District Court to assist appellant in his defense, is thirty-six years of age and was admitted to the practice of law in 1941. He has engaged actively in practice since 1946.

Attorney Jenkins testified that appellant told him in detail of how, while an employee of the Eastman Kodak Corporation, he had furnished Bridges, knowing him to be an agent of the Russian Government, information of a military nature, for which appellant was paid cash. He furnished this man numerous confidential reports in writing. Appellant had told Mr. Jenkins and his co-counsel that, when Bridges died, he continued to furnish reports, specimens and information, for which he was paid money, to a successor paid spy of the Russian Government, namely, Harry Gold. Gold had visited appellant's home while he was in Cincinnati. Mr. Jenkins testified further: "He told Mr. King and myself of how he after he had become employed at Holston Ordnance Works in Kingsport, how he gained admission to a certain part of that plant where his work did not carry him. And he was working in an entirely different part of the plant but knew what was being done, that it was a military plant, where explosives were made; that the personnel was highly screened, and that the plant was closely guarded. That upon gaining admission to that part of the plant where the real explosive was stored, to-wit, RDX, he while the guards were not looking secretly possessed himself of a quantity of the explosive known as RDX, put it in his pocket, and for the purpose of delivering it to Harry Gold, and that later and shortly thereafter that same specimen was delivered by Mr. Slack to Harry Gold in Kingsport, and at which time he, at Gold's insistence, furnished him with a confidential written report on the manufacture of an explosive known as RDX in Kingsport, Tennessee.

"Finally and after an exhaustive examination of our client, and as sympathetic a one as we knew how to conduct, and one which was conducted with the idea solely and only idea of what was the best thing to do for our client, I recall that I said to Mr. Slack this, 'Do you realize, Mr. Slack, that what you have told Mr. King and myself makes you guilty of furnishing information to a foreign government, information relating to the national defense, or of conspiring with Gold to do so?' And he said, 'Why, certainly I realize that,

gentlemen. I have realized that from the very beginning. I have no thought other than that I am guilty. I know I am. I have confessed everything to the F. B. I. agents and I want you as my attorneys to plead me guilty and to do it forthwith and let me begin serving my sentence and get it over with and get it off my conscience.' That was the culmination of some four hours talk with the defendant Slack. Mr. King and I left shortly thereafter. We discussed the case together as attorneys. We decided in view of our instructions from our client that the best service we could possibly render him was to make, to get the best recommendation possible from the District Attorney. That was undertaken shortly thereafter."

Attorney Jenkins testified further that never at any time did he refuse the request of appellant to visit him at the county jail, although he did not always go immediately; that he had not made a social companion or confidant of appellant, but as his attorney had complied with every request made of him during the intervening time between his appointment by the court and the date judgment was pronounced by the District Judge at a court session in Greeneville, Tennessee. He asserted that he had used his best efforts to impress upon the assistant United States Attorney all the mitigating circumstances in behalf of his client, so as to obtain a recommendation for clemency from the Department of Justice in Washington. He denied emphatically that he ever told appellant that "his case would be thrown out of court." He said that he had never represented a keener, more intelligent man than appellant, who could not have misunderstood him or Mr. King when they stated to appellant that what he had told them constituted guilt of the offense charged. He asserted that he made so many trips to the District Attorney's office in behalf of appellant, trying to obtain a commitment for a recommendation of light punishment, as to constitute himself almost a nuisance. He explained to appellant that the recommendation of the District Attorney upon authorization from the Department of Justice at Washington, that appellant be sentenced to ten years' confinement, would not be binding upon the United States District Judge; and that his client well understood this when he pleaded guilty. Attorney Jenkins denied positively that he had advised appellant not to make a personal statement to the District Judge when he entered his plea of guilty.

The testimony of Mr. Jenkins is corroborated in all material aspects by that of Mr. Kyle King, the other attorney appointed to represent appellant. It should be observed that, when the District Judge asked the appellant whether he had anything to say before judgment was pronounced, Slack answered, "No, Your Honor."

The record discloses that Attorney Jenkins made a most eloquent appeal in open court for the exercise by the District Judge of clemency toward his client. He stressed the changed conditions in this country's attitude toward Russia from 1943, when the offense was committed, to the fall of 1950, when appellant entered his plea of guilty to the charge of conspiracy to violate the espionage laws of the United States. He implored the sentencing judge to erase and disassociate the events of the last seven years, and "to judge the degree of appellant's guilt as if we were now living at the time of the commission of the offense." He stressed that in 1943 Russia was a friendly ally whose stand at Stalingrad had become "an epoch of raw courage and respect of 150,000,000 people in this country"; and that, then, "the very civilization of this world was tottering at the brink of the precipice." He declared that even with his legal training it would be hard for the judge to erase from his mind "the memories and the knowledge of the events of the last seven years and to go back to 1943," and to pass such sentence upon appellant as would have been considered commensurate with his offense at that time. He then added: "But I believe Your Honor can do it, and will do it." He referred to the spirit of contrition and penitence exhibited by appellant, and to how the F. B. I. agents had related that they had received heartiest and most complete cooperation

from him. The attorney described the case as a classic example of the exhibition of the greatest fear of mankind, which he termed the "fear of adverse publicity." He stated that appellant had been "virtually blackmailed into the commission of an offense because he had become involved with a man [Harry Gold] who the District Attorney says, and who we all know is a thousand times more steeped in moral turpitude than is Alfred Dean Slack." Mr. Jenkins said further that appellant knew it was wrong "to give even our closest ally a military secret" and had refused several times to do so; but had finally succumbed to the pressure applied by Gold to get what he wanted: the "know how" and the means and method of manufacturing RDX. He stated that appellant had quarreled violently with Gold and thrice had refused to do his bidding, but finally had succumbed to the tentacles of a man who had "the goods on him" and could expose, ruin and destroy him, not only with his wife and children, but with his father, mother, neighbors and fellow-countrymen. The attorney called attention to the fact that appellant had finally been blackmailed by Gold, through fear of exposure, into commission of the offense; and that "the threat of utter destruction in the mind of the American people, the threat of blasting all of his hopes and ambitions and his future by newspaper publicity was as strong as if Gold had put the point of a pistol to his temple and said, 'Hand over to me this sample of RDX.' "

Four days later, before sentence was imposed, Attorney Jenkins presented testimonials from numerous friends and neighbors, including the pastor of appellant, as to his good reputation and loyalty as a citizen. In concluding his plea for mercy for his client, the astute attorney again reminded the court that appellant had been under the dominance of Gold and that, at the time he gave Gold the secret formula, "we were fighting side by side and arm in arm with the Russian people." He finished his strong appeal with the statement that, at heart, Slack had not wanted to injure his country to the advantage of even an ally.

The presently changed and malicious attitude toward his conscientious and able lawyers is evinced by the fact that, on September 18, 1950, the day upon which Mr. Jenkins had made his eloquent plea for mercy, appellant wrote him and associate counsel King the following communication: "Gentlemen: This letter is an attempt to partially express my deep appreciation to you and to Mr. King for your labors on my behalf.

"I had never realized before that members of the legal fraternity did so much for those who are without funds but yet need a champion.

"Your help, your counsel and your representation were far more than I had expected; your efforts today were magnificent. For now, I most sincerely thank you.

"(Signed) A. D. Slack."

All other points argued on this appeal are regarded as too insignificant to merit discussion, none being well grounded in law.

Notwithstanding the eloquent appeal made by Attorney Jenkins for leniency toward his client, the District Judge stepped up the sentence recommended by the United States Attorney upon the authorization of the Department of Justice from ten to fifteen years' imprisonment and presented logical reasons for his action, which of course rested in his sound discretion. When sentencing appellant, he thus addressed him: "You are represented by learned and experienced counsel. They have presented your case to the Court in a most appealing and able manner. The crime that you have committed is not an ordinary offense against the Federal criminal laws. It is of national rather than local significance. It therefore involves relationships broader than the jurisdiction of this Court. It touches upon matters within the peculiar field of the Department of Justice and upon which representatives of that Department are especially qualified to speak.

"For the reason that it carries implications with which the Department of Justice and other departments of the Government as well are concerned, the Court does not regard it as purely a local offense and accordingly does not believe that it should be dealt with as such. For this reason the Court welcomes the recommendation from the Department of Justice and treats that recommendation with full confidence and respect. With due deference to the Department and the Government's attorneys, I have determined to depart from this suggestion or recommendation. Viewed as an isolated matter, this crime is shocking and can be contemplated only with detestation. It is ironical, however, from the standpoint of this defendant that he committed his crime at a time when the United States and Soviet Russia were allies, but stands before the bar of justice to receive his punishment at a time when the United States and Soviet Russia are stirred by mutual distrust, torn by the clash of opposing ideologies and face each other across the world under the threat of devastating war. The human mind changes with the winds of passion. It is the quality of justice that it does not permit itself to be swayed unduly by the shifting tides.

"Fifteen years' imprisonment is a long time in any life and in any period of history. For this defendant, it is not too much, I believe, in consideration of all the circumstances. It is enough."

The consideration and due process of law liberally accorded this self-confessed traitor to his country, Alfred Dean Slack, from the inception of the charges against him is illustrative of substantial justice as administered in our own country, in direct contrast to the denial of such in the country to which he exposed our military secrets. He has been permitted even to castigate outstandingly able, conscientious and eloquent attorneys, appointed to defend his rights, who righteously performed their duties. On the record in this case, he is clearly guilty beyond a reasonable doubt of the offense to which he pleaded guilty and for which he was lawfully sentenced.

Let the judgment of the District Court be affirmed.