### UNITED STATES v. BOOTH.
#### Cr. A. No. 19263–CD.

United States District Court
S. D. California, Central Division.
April 22, 1953.

Walter S. Binns, U. S. Atty., by Max F. Deutz, Asst. U. S. Atty., Los Angeles, Cal., for the United States.

Ernest Granville Booth in pro. per.

WEINBERGER, District Judge.

On March 4, 1953, pursuant to a stipulation that the matter might be heard at San Diego, California, the defendant appeared before the court on his motion to vacate and set aside his sentence herein. Other motions and petitions have been filed by this defendant in this and other cases, all directed toward securing his release from incarceration. At the hearing on March 4, the Assistant United States Attorney representing the United States recited the history of the various motions, etc., filed by the defendant in the United States courts, and with but a few exceptions the defendant agreed the statement was accurate, and truly recited the record. We quote from the transcript the portions of the statement agreed upon:

"Mr. Deutz: For the record, your Honor, as Mr. Booth has stated that he would like to have us make such a representation to the court, I am prepared to review the past history of this case so that we will have a chronology in the file as a part of the record.

"In 1943, Mr. Booth was convicted of theft from an interstate shipment, in Case No. 16167 * * * at Los Angeles. This was reversed on appeal for an error in one of the instructions to the jury. 9 Cir., 154 F.2d 73.

"In 1947, Booth was apprehended and indicted in Case No. 19263 charging bank robbery. At the time of his arrest, he had not been re-tried in Action No. 16167, the theft case referred to above.

"On April 21, 1947, Booth appeared before you for arraignment and plea. At that time, through his counsel, Morris Lavine, he asked for a delay in the proceedings in the District Court to permit him to plead to a similar robbery charge in the State Court. This request was granted. On May 19, 1947, Booth was sentenced in the State Court proceedings.

"On May 28, 1947, Judge Paul J. Mc-Cormick directed the United States Marshal to release Booth to the Sheriff of Los Angeles County so that he might enter upon the service of the State sentence.

"On June 6, 1947, Booth appeared before you again, represented by Mr. Lavine, and withdrew his plea to count one of the indictment in Case 19263.

"Thereafter, Booth entered a plea of guilty to count one. Booth pleaded not guilty to count two of the indictment. This count was dismissed after sentence. Booth then asked leave of the court, through Mr. Lavine, to withdraw his plea to count four of indictment No. 16167, the 1947 theft case—

"Mr. Booth: 1943.

"Mr. Deutz: That is correct, the 1943 theft case. The Clerk read count four of the indictment No. 16167 and then read count three thereof, which formed the basis for count four. This was the only remaining count in the indictment, Booth having been acquitted on count three in 1943. Booth then entered a plea of guilty to count four and a sentence was imposed of five years in Case No. 16167, to be followed by a sentence of fifteen years in Case No. 19263, both sentences to run concurrently with the sentence in the State Court, or so much thereof as might remain unserved.

"On July 10, 1950, Booth filed a motion to vacate, set aside and declare void judg-

ments of conviction and sentences in Cases numbered 16167 and 19263.

"By a memorandum of conclusions on the motion to vacate judgment, dated December 21, 1950, the court denied the motions on the authority of the United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, and in that memorandum of conclusions this court discussed the motions at great length.

"A deposition of Agent Furbush was taken and, pursuant to stipulation of the parties, was filed as testimony given at the hearing on said motion. The court questioned counsel on whether Booth desired to appear at the hearing and entered a minute order directing him to obtain a statement in writing as to whether Booth wished to be brought into court for a further hearing on this motion. Booth replied, that, when he filed his motion, he did not anticipate the appointment of counsel and that he was not well and did not wish to risk injury to his health by being removed to the Los Angeles County Jail during the hearing. Further, by a letter dated December 7, 1950, he indicated that the records, documents and arguments were all before the court and that there was nothing more to add. After a careful analysis and summation of appellant's claims, your Honor determined that the court had no jurisdiction because of the decision of the United States Circuit Court of Appeals in the Hayman case, 9 Cir., 187 F.2d 456.

"Booth brought another motion to vacate judgment in case No. 19263, which was denied by minute order dated May 25, 1951.

"On October 25, 1951, Booth filed a petition for a writ of habeas corpus, alleging an illegal imprisonment by Dr. Marion R. King, superintendent of the California Department of Corrections, Medical Facility, Terminal Island, California. He acted in propia persona. On October 25, 1951, the court granted him leave to so appear. On October 26th, Judge Yankwich appointed Henry P. Lopez as counsel for the petitioner and ordered the clerk to prepare an order to show cause why a writ of habeas corpus should not issue. On October 29, 1951, the order to show cause was issued, directed to the United States Marshal at Los Angeles.

"By minute order, dated November 26, 1951, Judge Yankwich discharged the order to show cause and denied the petition for writ of habeas corpus. Findings of fact, conclusions of law and order were signed December 3, 1951. The court analyzed this case at length in his remarks from the bench on November 25, 1951.

"Thereafter, Booth wrote Judge Yankwich and asked to have Mr. Lopez relieved as counsel and asked leave to file an appeal in forma pauperis. The court granted this request by minute order dated December 26, 1951.

"On January 30, 1952, appellant filed another motion to vacate and set aside sentences in Case No. 19263. By minute order, dated February 15, 1952, the court ordered that the motion not be set until the appeal had been heard on the habeas corpus. This minute order was corrected on February 21, 1952, deleting the reference to Case No. 16167. The court entered a further order denying a motion by Booth to reconsider the minute order of February 15, 1952.

"Subsequently, the appeal was taken on the habeas corpus and the Court of Appeals affirmed the judgment of the lower court. 9 Cir., 198 F.2d 991.

\* \* \* \* \* \*

"The Court: We can refer directly to the decision of the Court of Appeals as to the accuracy of the proceedings.

\* \* \* \* \* \*

"Mr. Deutz: Booth then brought a petition for rehearing in the United States Court of Appeals and this was denied. Finally, in November of 1952, Booth filed a petition for certiorari to the United States Supreme Court. I am advised that the United States Supreme Court denied this petition. 344 U.S. 909, 73 S.Ct. 330.

"The Court: Have you heard that, Mr. Booth?

"Mr. Booth: Yes, your Honor; that is correct. The petition for certiorari to review the Ninth Circuit Court of Appeals' decision in the habeas corpus matter was denied by the Supreme Court and, on De-

cember 22d, I was notified, and it was after that this motion was renewed."

While it was not called to the attention of the Court at the hearing on the motion, it appears that counsel's statement, quoted on page 2, line 31 is in error in that Booth had not previously pleaded in case No. 19263, and there was no "withdrawal" of a plea in such case on June 6, 1947 but rather, the entry of a plea of "guilty".

Booth's first ground for his motion to vacate sentence in that when the sentence in this case was imposed upon him on June 6, 1947, the court was without jurisdiction. This alleged lack of jurisdiction, Booth maintains, resulted from the fact that on May 28, 1947, the Presiding Judge of the District Court issued an order which Booth argues abandoned jurisdiction of Booth in favor of the Superior Court of the State of California, in and for the County of Los Angeles.

Booth's second ground for his motion is (quoting from his motion filed January 30, 1952):

"That the judgment rests solely on a plea of guilty which was obtained by coercion, fraud, bargaining and over-reaching of the defendant's free will; and was entered on the advice of and after the representation of an F. B. I. agent-attorney, that the U. S. Attorney had promised certain immunities to the defendant to so plead."

Booth's third ground is (quoting from said motion):

"That the defendant was not arraigned nor given a copy of the indictment (now Judgment) No. 19263, or informed of his legal rights prior to the Court's acceptance of his plea on June 6, 1947."

The motion was filed in forma pauperis; defendant Booth did not ask to have counsel appointed to represent him, and none was appointed. The defendant appeared in person at the hearing on his motion. He did not request that any witnesses be subpoenaed, and the Government offered only the testimony of former F. B. I. Agent Edward A. Furbush; the defendant was allowed a wide latitude both in his own testimony, and in his cross-examination of former Agent Furbush.

From Mr. Booth's testimony it appeared that he had retained attorney Morris Lavine on or about April 9, 1947, shortly after the indictment in this case was returned. However, according to Booth, on March 23, 1947, he had not retained Mr. Lavine, and was without counsel; that on that date, he was arrested and taken to the office of the F. B. I. and interrogated for several hours, during which time Mr. Furbush was present; that later, on March 25th or 26th, Booth was taken from the County Jail at Los Angeles, and two other agents attempted an interrogation, but Booth refused to converse with them; that on March 29th, he had a conversation with Agents Furbush and Hutcheson wherein the case of a hypothetical Joe Doakes who had been indicted on a Federal charge was discussed by Booth, Furbush and Hutcheson. Booth further testified that on May 19, 1947 the two agents came to visit him and asked him how he intended to plead in this case, and at that time Furbush stated he was going to have an interview with the United States Attorney. On May 21, Booth stated he was taken by Agents Furbush and Hutcheson to a barred room in the quarters of the United States Marshal, and asked how he was going to plead.

At that time Booth told them he wanted to see his attorney. Whereupon Furbush told him that he, Furbush, had talked with the United States Attorney and the latter had stated if Booth entered pleas of guilty in this case, and in the other Federal case then pending, No. 16167, the United States Attorney would recommend that the Federal court impose five-year sentences to be served concurrently with the sentences imposed in the Superior Court.

Booth testified that he had confidence in Furbush, and liked him, that Furbush had done many decent and helpful things for him, but when Furbush mentioned that he had secured the United States Attorney's promise to recommend Federal sentences concurrent with State court sentences, Booth stated again he wanted to discuss the matter with his counsel. Whereupon, according to Booth, Furbush stated he had worked a long time on the matter, and

Booth could either take it or leave it, and he must make his decision at once.

Booth testified he was at that time suffering from an illness of the throat and lungs which was greatly aggravated by the Los Angeles smog, and nearly exhausted; that because of such condition, he agreed to enter pleas of guilty in the Federal court in return for the representations made to him by Agent Furbush.

Booth further stated that he was unable to see his counsel, except for a moment on May 26th, but on May 29th or 30th, Mr. Lavine came to visit Booth in the County Jail; whereupon Booth told his counsel of the conversation with Furbush, and that Booth had agreed to enter pleas of guilty; that his counsel became very angry, but agreed to represent him at the time of his plea in Federal court.

Former Agent Furbush testified that he and Agent Hutcheson had talked with Booth several times; that on one occasion Booth requested that Furbush ascertain if he, Booth, could be allowed to be sentenced by the State court prior to his Federal court trial; that on another occasion Booth was interrogated in the Marshal's office at a time when he was required to be in Federal court, but that at no time was Booth taken from the County Jail to the Marshal's office for the express purpose of interrogation by F. B. I. agents, and that the only conversation had in the Marshal's office was of but a few minutes' duration.

That at the conversation last mentioned, Booth asked Furbush if he had presented the facts to Mr. Carter, the United States Attorney, and Furbush replied that he had but had not gotten a specific answer.

Later, according to Furbush, Booth sent for Furbush to come to the County Jail to see him, and at that interview, Furbush told Booth that he had talked with the United States Attorney, and the latter had agreed to recommend that Booth's Federal sentences be served concurrently with his State court sentences, and that at that time Booth stated he would plead guilty to the Federal charges. Former Agent Furbush further testified that Mr. Booth asked him about the length of sentence, and he, Furbush, told Booth that he did not know anything about how long the sentence would be, that the length of the sentence rested with the court.

Furbush further stated that at the time he discussed the matter of the concurrency of the sentences with the United States Attorney the latter mentioned he was going to telephone Mr. Lavine, the defendant's counsel, and that to the best of Furbush's knowledge, such conversation occurred between the United States Attorney and Mr. Lavine while Furbush was in the office on such latter occasion.

Mr. Furbush further testified that at any time he interviewed Booth, it was in response to Booth's request that Furbush come to see him. That the discussion regarding Booth's pleading guilty to the Federal charges in return for a recommendation that the Federal sentences be made concurrent with the State court sentences were initiated by Booth, and it was on Booth's insistence that the matter was presented by Furbush to the United States Attorney.

With reference to the first ground urged by Booth in support of his motion, that the Federal court lost jurisdiction because of its order dated May 28, 1947 ordering the Marshal to release Booth to the Sheriff of Los Angeles County for the purpose of entering upon the service of the State sentence theretofore imposed upon him, the record discloses that it was Booth's request that he first be sentenced in the State court, in the hope that he might serve his State court sentence first, or along with his Federal sentence, in a State prison where he hoped he would be able to pursue his profession of writing. The transcript of the hearing of April 21, 1947 shows that Booth's counsel, Mr. Morris Lavine requested a continuance of the plea in the Federal case so that the defendant might plead to the State charge first, and that an agreement to this effect had been reached between Mr. Lavine and the United States Attorney's office. On April 21, 1947 the court asked Mr. Lavine if there were any questions of the jurisdiction of the Federal court and counsel replied there was none,

that the defendant wished both courts to have jurisdiction, and there was only the question of which court would take the first plea.

We find nothing in any of the proceedings to indicate any loss of jurisdiction by the Federal court.

 As to the alleged failure to arraign the defendant in case No. 19263, Booth testified that in the discussions with the F. B. I. agents concerning this latter case he was not told that he was being charged with bank robbery by the use of a deadly weapon, but thought his indictment referred only to bank robbery, and that he thought he was pleading guilty to an offense which carried a lesser penalty than the offense of bank robbery by the use of a deadly weapon. We might observe that we do not believe Booth's testimony that he was unaware of the nature of the charges against him prior to the date he appeared for his plea, and that he first learned of the exact charges when he heard the indictment read to him just before his plea. However, both counts of the indictment, Count One, laid under 12 U.S.C.A. § 588b(b) and Count Two, laid under § 588b(a) carry a maximum penalty of over the fifteen years' imprisonment to which Booth was sentenced on his plea of guilty to Count One.

Further, the transcript of the hearing of June 6, 1947, the date on which he entered his plea of guilty, recites that Mr. Lavine was present representing Mr. Booth and Mr. Kinnison appeared for the Government; that Mr. Lavine stated:

"We have a matter here for change of plea and disposition, Your Honor, of a case which is pending here, and a companion case, in a way that has been in the State Court, that of Mr. Ernest Booth.

"At this time we ask leave to withdraw the plea heretofore entered as to Count 1 of the Indictment Number 19263 for the purpose of entering a new and different plea to that count. * * * Case No. 19263."

Further on in the proceedings that court inquired if there had been an arraignment, to which Mr. Kinnison replied:

"The defendant has been arraigned, your Honor."

Mr. Lavine waived the reading of the indictment; the court inquired of the defendant if he wished the indictment read, the defendant replied in the negative, but the court ordered the indictment read, and the clerk read Count 1 of the indictment in said case.

The defendant then entered a plea of guilty, and the court asked him twice if he pleaded guilty or not guilty, each time the defendant replied, "Guilty".

Mr. Lavine then stated that the defendant had heretofore entered a plea of not guilty to Count 4 of the indictment in case No. 16167 and that the defendant desired to withdraw the plea of not guilty, and enter a different plea. The court inquired personally of the defendant if such was his desire, and the answer was in the affirmative.

The indictment was then read to the defendant, and the court inquired personally of the defendant if he understood Count 4, whereupon the defendant withdrew his plea of not guilty and entered a plea of guilty; the court inquired if the defendant was ready for sentence, and Mr. Lavine answered that he was.

We are unable to ascertain from the record whether a formal arraignment of the defendant was made as to case No. 19263 prior to the date he entered his plea, to wit, June 6, 1947. It is certain, however, the defendant was fully informed at the time of his plea and prior thereto, and suffered no prejudice if he was not formally arraigned.

After the defendant had stated he was ready for sentence, his counsel made a lengthy statement; among other matters which counsel presented, he related that the defendant was a writer by profession, that he learned to write in prison; that he had worked in various studios, until he lost his voice; that he needed throat operations and attention and (quoting from the transcript of the hearing):

"In desperation and while waiting for some of the funds to come in from some of his efforts, *he went out and*

*again committed some crimes to continue in a life where he found it difficult under the circumstances he was in * * *.* (Emphasis supplied.)

"As a result of that situation, he went into the State courts. Realizing that he was in a very difficult position, *he discussed with government agents and with me the possibility of his future life.* As a matter of fact, he was anxious to get back to a hospital, whether it be in prison or elsewhere, and in a place where he might continue to help himself and try to do what he could while he was being operated on and while he received the medical attention which he needed. (Emphasis supplied.)

"I am not quite sure, your Honor, whether perhaps in the back of his mind there was a desire to get into a hospital in a prison, if necessary, where he could be taken care of, but at least he was in that desperate situation where he had no funds and he did need help for his personal and physical conditions. *So he did commit the crimes * * *."* (Emphasis supplied.)

Mr. Lavine then asked that the Court impose a concurrent sentence, and stated further:

"I, frankly, discussed this entire situation with the government counsel and we have reached something of an accord in this proceeding, which we have had continued from time to time so that we could reach this understanding which we hope will be agreeable with your Honor and followed by your Honor."

Following such statement by Mr. Lavine, Mr. Kinnison said:

"Your Honor, as far as the understanding is concerned, it is correct that we have discussed this matter with Mr. Lavine and we have come to an agreement relative to the counts to which the plea has been entered. As to any understanding that might in any way bind the court in the matter of judgment, naturally we both understand that we cannot bind the court in any way."

Mr. Kinnison then summarized the facts in the earlier case, mentioning that the charge was theft from interstate shipment of $320,000 worth of securities; that Mr. Booth did not commit the theft, but acted as intermediary in efforts to sell the bonds; that the defendant was found guilty after a jury trial, but that the judgment was reversed because of the giving of a certain instruction; that the second case involved nine bank robberies, and in each instance the defendant used a firearm.

The court then inquired of the defendant's prior record, and was told by Mr. Kinnison that the defendant had written a book, an autobiography, while confined in Folsom prison, and that the incidents related in the book were corroborated by fingerprint records; that the defendant had begun a life of crime at the age of ten, and had been involved in an amazing amount of burglaries; that he then switched to check forgeries, going from town to town forging checks; that he then was involved in a car theft ring; that he was sentenced to a reformatory from which he had escaped; was sent to another institution from which he also escaped; that while being returned from this escape, he escaped again; he was apprehended and placed in another jail, from which he also escaped. He was finally sentenced to San Quentin and was paroled, violated the parole and served the full sentence. Later, he was convicted of armed bank robbery in Oakland, sentenced to the penitentiary and served approximately 14 years in Folsom Penitentiary. After being released from Folsom he was convicted of petty theft, and was serving a year's sentence on that case when he was tried in Case No. 16167.

Mr. Kinnison recommended that in case No. 16167 a sentence of five years, the same as had been previously imposed in such case be given defendant, to run concurrently with the State sentence then being served by the defendant. The government counsel recommended that in the bank robbery case the defendant be given "a very substantial sentence" and that it run

concurrent with the State sentence, which was ten years to life.

Mr. Lavine observed that in view of the fact that the government had recommended that the sentences be concurrent, he felt that the court would dispose of the matter on a very fair basis, and the court replied:

"Of course, I haven't committed myself nor do I commit myself in any case as to what the sentence might be, and I don't want to have the defendant under any misapprehension as to what I may do. I might not do what he has in mind; I might do something else. In other words, I don't become a party to any idea that he may have in view of any conference or suggestion that may have been had between counsel, in view of your statement that you have discussed this with the United States Attorney's office. Whatever I may do will be entirely independent of whatever idea you may have or whatever understanding your client may have. I want to make my position plain in this case."

After which the court stated to counsel:

"You are at liberty to make any plea that you wish for your client but I don't want any misapprehension to the effect that there was any understanding, express or implied understanding, with the Court on what the sentence might be."

Mr. Kinnison then said:

"I think, as far as the government is concerned, I made our position clear."

To which the Court replied:

"I think you have, but I want this defendant to understand my position."

Mr. Kinnison at that time requested the record to show that the defendant was nodding his head in the affirmative as the court was speaking.

After further discussion which is not pertinent here, the court inquired if the defendant had any cause to show why sentence should not be pronounced, counsel for defendant replied in the negative, the court inquired if defendant were ready for sentence, to which his counsel replied in the affirmative.

The court then imposed sentence on each case. There followed some discussion between both counsel and the court as to the meaning of the sentence. Mr. Kinnison moved to dismiss Count 2 in the later case, and the proceedings were concluded.

█ We do not believe that defendant thought any agreement had been entered into by the United States Attorney with reference to a recommendation as to the length of sentence to be imposed. Had the defendant so believed, and had he believed the agreement had been broken, there was ample time after the United States Attorney made his recommendation in open court for the defendant or his counsel to have stated the fact to the court and asked for a withdrawal of the plea of guilty prior to sentence.

The motions, brief, and correspondence of the defendant filed in propia persona prior to his personal appearance in this court rvealed him to be a man of intelligence; at the hearing on March 4, 1953 his conduct of his own case displayed a remarkable knowledge of procedural matters and considerable education or experience in the legal field.

The record shows that defendant was represented by competent counsel at the time of sentence and at all stages of the proceedings prior thereto.

Further, had this particular defendant appeared entirely without counsel prior to and at the time of his plea, his past record would suffice to indicate that he must long have been aware of his constitutional rights.

We conclude therefore, that the plea of guilty to Count One of the indictment herein was made voluntarily by the defendant, and not because of any fraud or overreaching on the part of Government agents, nor because of any "bargain" which the defendant thought had been made between himself and the United States Attorney,

nor because of the Los Angeles smog, nor because of defendant's illness or exhaustion; that at the time of making the plea the defendant was fully informed of the charges of the indictment, and of his constitutional rights, and that the court had jurisdiction of the defendant at all times during the proceedings before it.

This is the third occasion on which a judge of this court has voiced an opinion as to the contentions raised by the defendant in the instant motion. Our views as to these contentions were set forth in a written memorandum filed December 21, 1950, and our Chief Judge, Hon. Leon R. Yankwich, on September 3, 1951, made findings of fact and conclusions of law which are most pertinent to the matters raised here.

Since this is the first time the defendant has appeared in person to urge his contentions, and the first time he has appeared in person to testify in support of them, it is our thought that formal findings of fact, conclusions of law and order should be made with reference to the motion to which this memorandum is directed.