**Mark Lee OVERMAN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 13987.**

United States Court of Appeals Sixth Circuit.

July 12, 1960.

Mark Lee Overman, in pro. per.

Rives Manker, U. S. Atty., and Edward N. Vaden, Asst. U. S. Atty., Memphis, Tenn., on the brief, for the United States.

Before McALLISTER, Chief Judge, and MILLER, and CECIL, Circuit Judges.

CECIL, Circuit Judge.

This appeal is from an order of the District Court for the Western District of Tennessee, denying the appellant's motion to vacate sentence under Section 2255, Title 28 U.S.C.

The appellant was indicted by a grand jury and charged with one of the most reprehensible crimes on the books. He was indicted under Section 1201, Title 18 U.S.C., which makes it an offense to knowingly transport any person in interstate commerce, who has been unlawfully seized or kidnaped. The prescribed penalty is death, if the person has not been released unharmed and the jury so recommends. The alternative, if the death

penalty is not imposed, is imprisonment for a term of years or for life.

The indictment was so framed that a jury trying the case might recommend the death penalty. The accused pleaded guilty and was sentenced to life imprisonment. Without going into details of the horrible offense, suffice it to say the facts as charged are: The appellant concealed himself in the rear of the prosecuting witness' car, while she was using the telephone in Humbolt, Tennessee. After she had resumed her place in the car and had reached the suburbs of the city, he arose and at the point of a gun took possession of the car, drove it into Kentucky and assaulted her.

The motion to vacate sentence now before the Court for review is the third such motion filed in the District Court. Extracted from a mass of verbiage, the essential claims of the appellant are: 1. The court did not have jurisdiction for the reason that he was illegally brought into the state of Tennessee from the state of Kentucky, where he was arrested. 2. He was coerced into making a confession. 3. He was coerced into pleading guilty by F.B.I. arresting officer and incompetent counsel, and 4. The court did not determine if the plea was voluntary before it accepted it.

We are particularly concerned with the charges of coercion. An examination of the claims made by the appellant in his motion discloses that he states no specific facts of coercion. With some repetition the charges as stated are about as follows: It is the court's duty to ascertain that the plea of guilty was entered without threats or promises. The court may refuse a plea of guilty and shall not accept the plea without first determining that the plea is intelligently made and voluntary. The petitioner's plea of guilty was not entered freely and voluntarily. It was induced by threats made by his court appointed lawyers, and by coercion and intimidation of the arresting officer with the F.B.I. agents acting in concert.

■■ Because of this failure to be specific about the charges of coercion, we have examined the record before the trial court in order to assist us in arriving at a conclusion. A coerced confession may be the subject of collateral attack. Leyra v. Denno, Warden, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948. The record discloses that the trial judge was solicitous of the rights of the appellant at every stage of the proceeding.

The indictment was filed in the court on January 5, 1953 and on January 6, 1953 the accused was brought before the court for arraignment.

Judge Boyd explained to the appellant, the defendant then, that he was indicted on a serious charge and that he was entitled to have a lawyer represent him at every stage of the proceeding. He carefully inquired into his ability to employ a lawyer and after concluding that he was unable to privately engage counsel, he suggested the appointment of two lawyers to defend him. The defendant made a request that such appointment be made.

This was at the morning session and the court took the matter under advisement until two o'clock in the afternoon. At that time, he appointed Mr. Carmack Murchison and Mr. Roger Menzies to represent the defendant. The court in its order overruling the defendant's motion to vacate stated: "The Court personally knows this prisoner was represented by two highly competent attorneys with large experience in the handling of criminal matters," and the record substantiates this appraisal.

Mr. Murchison entered a plea of not guilty for the defendant and the court suggested the next term of court for trial. Recognizing that the case would take considerable time for preparation on both sides, he set March 24 as the trial date.

A jury venire of one hundred forty-seven names was drawn which was served on the defendant on March 18. The list of jurors together with the names of all the government witnesses were given to defense counsel. One day before the date set for trial the lawyers for the defendant had him brought into court and entered a plea of guilty on his behalf to the charge in the indictment.

The trial judge then asked the defendant the following questions:

"The Court: Is that what you want to do, Overman?

"The Defendant: Yes, sir.

"The Court: You want to plead guilty?

"The Defendant: Yes, sir.

"The Court: Do I understand you admit that these charges are true?

"The Defendant: Yes, sir.

"The Court: You took Mrs. ——— (the prosecuting witness) into the state of Kentucky, did you?

"The Defendant: Yes, sir.

"The Court: In this car?

"The Defendant: Yes, sir.

"The Court: And you assaulted her, did you?

"The Defendant: Yes, sir.

"The Court: You had sexual relationships with her?

"The Defendant: Yes, sir."

The United States Attorney made a detailed statement of the facts at the conclusion of which he stated: "We have a statement from the defendant in which he admitted in substance what I have just stated, and he has here today." This statement or alleged confession was not admitted in evidence or read to the court. He had a previous felony record of two grand larcenies and one robbery, for all of which he served time.

Judge Boyd asked Mr. Murchison if the defendant was able to discuss the matter with counsel with reasonable intelligence and if he understood the seriousness of the charge. Mr. Murchison answered both questions in the affirmative. Judge Boyd had every reason to have confidence in the lawyers he appointed and that they would fully advise the defendant of all of his rights.

Mr. Murchison stated that the defendant was intelligent, that he had been cooperative, frank and truthful, and had helped his counsel all he could. He also said: "Mr. Menzies and I have searched quite thoroughly for some evidence that might have led us to have entered a different plea from that that was entered, but we found none, and we have reluctantly brought him and permitted him to come to the Bar of Justice and submit a plea of guilty, only because we were faced—we had no other alternative." Such investigation by competent counsel would embrace the circumstances of the confession, as well as any other evidence that might have a bearing on the guilt or innocence of the defendant. Mr. Murchison further stated that the sheriff had been cooperative and had made the prisoner available to counsel so that they could interview him in private.

From this record it seems apparent that the trial judge took adequate precaution to see that the plea was voluntarily entered; that the defendant had competent counsel who were given a list of the government witnesses; that they searched for evidence that would warrant standing on the plea of not guilty and that after investigation they came to the conclusion that there was no alternative to pleading guilty.

Counsel for the defendant had a great responsibility. The stakes were high. Their client faced the death penalty if he were tried to a jury.

From the story of the crime as related by the United States Attorney, there was obviously supporting testimony for all phases of the crime, except the actual assault on the prosecuting witness. Even that would probably be capable of some substantiation by medical testimony, since she was taken to a hospital in Bardstown at 4:30 in the morning. The government had subpoenaed twenty-five or thirty witnesses and the case could have undoubtedly been proven without the aid of the confession. The defendant does not now say he did not do the things charged, but seeks to justify his actions on the basis that it was a friendly arrangement and with the consent of the prosecuting witness. All of the known facts aside from the confession belie this.

Facing the maximum penalty as the defendant was and under the circumstances revealed by his counsels' investigation there was sound reason for their

advice and for his decision to plead guilty. To now set the sentence aside or even to require a hearing on the flimsy and indefinite claims made by the appellant would make a mockery out of court procedure, which permits a defendant to appear in court, admit his guilt and attempt to show mitigating circumstances.

In Burgett v. United States, 8 Cir., 237 F.2d 247, 251, certiorari denied 352 U.S. 1031, 77 S.Ct. 596, 1 L.Ed.2d 599, a motion to vacate was denied without a hearing. The court said, 237 F.2d at page 251: "A defendant, having been represented by competent counsel, having been given every opportunity and right afforded by the law and having entered a plea of guilty, may not, without some reasonable basis, come into court years later and repudiate his prior plea. It is not the intent of Section 2255 nor the meaning of United States v. Hayman, supra, to require a hearing upon the mere assertion that a prior plea was false. To so interpret the statute and the Hayman case is to say that every time a defendant desires to change his mind as to the reason for entering a plea a hearing must be held with the defendant present. The records of the District Court conclusively show that appellant was not denied any federal right and that he was not entitled to be present at a hearing on his motion." See also Rayborn v. United States, 6 Cir., 251 F.2d 950; Johnson v. United States, 6 Cir., 239 F.2d 698, certiorari denied 354 U.S. 940, 77 S.Ct. 1404, 1 L.Ed.2d 1539; Cain v. United States, 8 Cir., 271 F.2d 337; Edwards v. United States, 103 U.S. App.D.C. 152, 256 F.2d 707, certiorari denied 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed. 2d 82.

Waley v. Johnston, 316 U.S. 101, 62 S. Ct. 964, 965, 86 L.Ed. 1302, is distinguishable from the case at bar. There the petition "specifically alleged that petitioner's plea of guilty had been induced by the threats of a named Federal Bureau of Investigation agent to publish false statements and manufacture false evidence that the kidnaped person had been injured, and by such publications and false evidence to incite the public and to cause the State of Washington to hang the petitioner and the other defendants." The court made reference to the specific nature of these threats and the failure of the respondent to deny or account for his failure to deny them.

In Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830, the defendant was without counsel and substantial issues of fact were raised which distinguish it from the case at bar.

Com. of Pa. ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126, and United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, can be similarly distinguished from the case now before us.

■ The claim that the court lacked jurisdiction because the defendant was allegedly brought into the state of Tennessee illegally is without merit. Frisbie, Warden v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541; Klink v. Looney, 10 Cir., 262 F.2d 119; Ragavage v. United States, 5 Cir., 272 F.2d 196.

Upon consideration of the briefs, the record, and the record in the original hearing in the trial court, we conclude that the motion on its face and the files and records in the case show conclusively that the prisoner is not entitled to any relief prayed for in his motion.

The judgment of the District Court is affirmed.