**L. C. WILSON, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. A. No. 69-C-27-A.**

United States District Court
W. D. Virginia,
Abingdon Division.

Aug. 27, 1969.

6. The Grand Jury that indicted Anderson had six members; eighteen others between 1937 and 1956 had seven.

Edward T. M. Garland, Garland & Garland, Atlanta, Ga., for plaintiff.

Robert S. Irons, Asst. U. S. Atty., Western Dist. of Virginia, Roanoke, Va., for the United States.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

Petitioner, L. C. Wilson, alias Pat Wilson, seeks relief under a motion to vacate sentence, Section 2255, Title 28 U.S.C., from two sentences totaling 30 years, imposed on his guilty plea to a violation of the Federal Kidnapping Act, 18 U.S.C. § 1201. This Court granted an evidentiary hearing on June 9, 1969 to determine the basis of petitioner's claim.

Section 1201(a), Title 18 U.S.C. makes it an offense to knowingly transport in interstate commerce any person who has been unlawfully seized or kidnapped. Under this section an individual can be punished "by death if the kidnapped person has not been liberated unharmed and if the verdict of the jury shall so recommend." The alternative being, imprisonment for a term of years, or for life, should the death penalty not be imposed.

On May 2, 1960 the petitioner was indicted under the provisions of 18 U.S.C. § 1201(a) for the April 16, 1960 interstate transportation of Helen Jo Dickens and Charles C. Dickens. Both persons were kidnapped and each of whom "was not liberated unharmed". Some five months later, on October 12, 1960 Wilson pleaded guilty and was sentenced to 20 years imprisonment respecting Helen Jo Dickens and 10 years imprisonment with respect to the kidnapping of Charles C. Dickens. Both sentences are to run concurrently. On March 13, 1969 petitioner filed with this Court a motion to vacate sentence in accordance with 28 U.S.C. § 2255. As stated previously, the petitioner was granted an evidentiary hearing on June 9, 1969 to determine the basis of petitioner's claim.

Petitioner, represented by counsel, maintained that he was denied a trial by jury in that his plea was prompted by a fear of the death penalty and thusly denied him of his Fifth Amendment right not to plead guilty and the Sixth Amendment right to a jury trial.

This Court is concerned over the voluntariness of petitioner's plea of guilty on October 12, 1960. It is well recognized that one of the Court's primary duties is to make sure that a plea of guilty was entered into freely and without coercion. In making such a determination, the Court should be conscious of the fact that the plea was "intelligently" made as well as being voluntarily and willingly entered into.

An examination of the records of the trial court and rehearing stages are necessary to provide us with the proper basis in ascertaining the validity of petitioner's claim.

Over the five month period prior to Wilson's plea of guilty on October 12, 1960, the petitioner was represented by two different sets of counsel, Mr. Brumet and Mr. Moore on May 27th and June 15th and Mr. Parks and Mr. Widener on July 18th and October 12th. The record discloses that Wilson was advised on May 16th that he had been indicted on a very serious charge and that he was entitled to have a lawyer represent him during every stage of the proceedings. Wilson at first felt that he could employ his own private counsel, but he was unable to do so because of financial difficulties. Shortly thereafter on May 27th, Wilson was represented by court appointed counsel (Mr. Brumet and Mr. Moore) and entered a plea of guilty after consulting with said counsel. The record discloses the following testimony:

THE COURT: Have both counsel conferred with Mr. Wilson as to the nature of the indictment?

MR. BRUMET: Yes, sir.

THE COURT: And the penalty that the violation carries?

MR. MOORE: Yes, Your Honor.

THE COURT: And is he fully aware of the consequences of a plea of guilty in a case like this?

MR. MOORE: Yes, sir. He has been made quite aware of it.

THE COURT: Now, Mr. Wilson, you know what you are charged with. As your counsel has said, they have been over the indictment with you, but you are charged with on April 16th, 1960, knowingly and feloniously transporting and causing to be transported in interstate commerce from Kingsport, Tennessee, to Scott and Washington Counties, in the Western District of Virginia, Helen Jo Dickens, a female, who had been unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted and carried away and held for ransom, reward or otherwise, and the said Helen Jo Dickens was not liberated unharmed, and Count 2 of the indictment charges the same offense, that is, the same language except that the person that it charges you with having kidnapped is Charles C. Dickens. Now, do you understand both counts of the indictment?

THE DEFENDANT: Yes, sir.

The testimony continued as follows:

THE COURT: Counsel have indicated to the court that you wanted to enter a plea of guilty as to both counts of the indictment. Is that your desire?

THE DEFENDANT: Yes, sir.

THE COURT: How do you plead to each count of the indictment?

THE DEFENDANT: I plead guilty, Your Honor.

Since a probation report wasn't prepared at that time, sentencing of Wilson was extended to June 15th. At this hearing the defendant, against the advice of counsel, changed his plea to not guilty. Because of his change in plea and Wilson's contention that he was being "railroaded", the Court, upon defendant's motion, relieved counsel of their duties, and at a subsequent hearing on July 18th, the Court appointed new counsel after the petitioner was unable to obtain counsel through his own means. The Court appointed Mr. Parks and Mr. Widener to represent petitioner. The final hearing was set for October 12, 1960, at which time the defendant, after having ample time to confer with counsel, again changed his plea, this time, from not guilty to guilty. The following colloquy ensued:

THE COURT: Mr. Wilson, your counsel have made the motion that you be allowed to withdraw your plea of not guilty and to plead guilty, and you nodded your head when I asked you if you fully understood that, but I want to be absolutely sure that you do, that it is your desire that a plea be changed from not guilty to guilty.

THE DEFENDANT: That is right, Your Honor.

THE COURT: Well, do you understand that having entered such a plea, it is not necessary to have a trial by jury? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And do you further understand that the district attorney has a right to make a recommendation? He is not obliged to. Whether he wishes to make a recommendation or not, I do not know, but I want you to understand that I am not at all bound to accept the recommendation of the district attorney. Do you understand that by your plea that your case is submitted to me for complete and unfettered determination of what penalty to impose?

THE DEFENDANT: I do, Your Honor.

THE COURT: You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: It is further my purpose to hear some evidence, because I know nothing about your case, and I want to understand it in order

to be fair to the government and to you. You understand that I propose to hear some evidence?

THE DEFENDANT: Yes, sir.

THE COURT: I will be glad to permit you to make a statement if you wish to, and you will not be required to make a statement unless you wish to, but you understand that the whole matter is submitted to me in my discretion to impose such penalty as I see fit?

THE DEFENDANT: Yes, sir.

THE COURT: All right. The motion is granted and it will be noted that the defendant enters a plea of guilty.

Petitioner, in his motion to vacate sentence under § 2255, 28 U.S.C., now maintains, some eight and a half years later, that he was motivated to waive his jury trial upon the fear that if found guilty by a jury the death penalty might be decreed. Upon an examination of the entire record to date, including the June 9th hearing, this Court is of the opinion that petitioner Wilson should be denied the relief he seeks.

We are fully aware of the principles enunciated in United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), wherein the Supreme Court held invalid the death penalty provision of the Federal Kidnapping Act on the basis that it had a chilling effect which imposed an "impermissible burden" on the exercise of one's constitutional rights under the Fifth and Sixth Amendments. However, this section was considered separable from the remainder of the Act

and did not completely destroy the Act itself. With *Jackson* in mind, the Fourth Circuit has seen fit to apply the "principal motivation" test in a recent case, Alford v. North Carolina,[1] 405 F.2d 340 (4th Cir. 1968), as the determining factor in analyzing one's deprivation of basic constitutional rights. The Fourth Circuit states that "a prisoner is entitled to relief if he can demonstrate that his plea was a product of those burdens—specifically, that his principal motivation to plead guilty or to forego a trial by jury was to avoid the death penalty." The Supreme Court in *Jackson,* however, stipulated that even though "the Federal Kidnapping Act tends to discourage defendants from insisting upon their innocence and demanding trial by jury (it) hardly implies that every defendant who enters a guilty plea to a charge under the Act does so involuntarily". 390 U.S. 570 at 583, 88 S.Ct. at 1217.

■ The question of voluntariness is essentially one of fact to be determined from the record, not one of subjective intent on the part of the accused. This Court is of the view that Judge Thomsen in McFarland v. United States,[2] 284 F.Supp. 969, 977 (1968) was correct when he stated that, "the totality of the circumstances in each case should be considered to determine whether there was any denial of due process in the light of the development of the law."

*McFarland* has been cited with approval by the Court of Appeals for the Tenth Circuit in the case of Brady v. United States, 404 F.2d 601 (1968). The Court in *Brady* denied petitioner

---

1. This case was an appeal from denial of habeas corpus after a plea of guilty had been rendered in a murder case. It deals primarily with the voluntariness of a plea under North Carolina's particular statutory scheme to punish the varying degrees of murder. The State of North Carolina has appealed this case to the Supreme Court and probable jurisdiction was noted with the case being placed on the summary calendar; 394 U.S. 956, 89 S.Ct. 1306, 22 L.Ed.2d 558. This case, formerly No. 1064 on the 1968–69

appellate docket of the Supreme Court, is now pending on the 1969–70 appellate docket as Docket No. 50; 38 U.S.Law Week 3002.

2. McFarland v. United States involved a motion made under 28 U.S.C. § 2255 by the petitioner after he had been convicted upon his plea of guilty to a bank robbery statute, 18 U.S.C. 2113(e), which carries a death penalty provision substantially similar to the kidnapping statute, 18 U.S.C. § 1201(a), involved in the present case before this Court.

relief under § 2255 after he had pleaded *guilty* to an offense of 18 U.S.C. 1201(a).[3] Should this Court use the "totality of circumstances" test presented in *McFarland*, the record would clearly show that the petitioner's plea of guilty was entirely voluntary. The "principal motivation" test provided by the *Alford* case, does seem to suggest a different criteria to be employed than that expressed in *McFarland*, but even if this Court were to use the motivation test, petitioner Wilson still cannot successfully meet the necessary criteria needed to show that his guilty plea was primarily motivated out of fear of the death penalty. As stated in *Alford*, "We must determine the *extent* to which, if at all, petitioner was moved to plead guilty". Under the recorded testimony of the petitioner, his fear of the death penalty came from no other source than counsel.[4] At the June 9th hearing, both Mr. Moore and Mr. Widener testified as follows:

MR. SHAFFER: Well, what I have in mind is with reference to the possible punishments on a plea of guilty and not guilty.

MR. MOORE: Oh, I'm quite sure we explained that to him, and I don't remember the exact language. I know we——I know we explained to him the possible——the possibility of a life sentence, the possibility that if he were tried by a jury that he would receive a death sentence, but that I don't think was emphasized. It is my distinct recollection, but it is my feeling that Mr. Brumet and I thought there was very little chance, and so explained to this man, very little chance that he would receive a death sentence, because no one——no one was actually killed, although as I recall it was rather a brutal crime. Whether he committed it or not, it was a rather brutal crime.

MR. SHAFFER: Is it correct to state that the possibility of a death sentence in a trial by jury upon a plea of not guilty was one of the factors that led you to recommend that he enter a plea of guilty?

MR. MOORE: Yes, I would say it was a factor, but a *very minor factor*, because I never did think in this case that the death sentence would be imposed. Now I say that having been an Assistant United States Attorney, Mr. Shaffer, for three years and having tried similar cases. It is very seldom in the federal system that a death sentence is imposed for any kind of crime; certainly not one of this type.

Upon cross examination by counsel for the government the following discussion ensued:

MR. MASON: As you recall the circumstances of your consultation with Mr. Wilson, would you say that the possibility of a death sentence being imposed if he took a jury trial was the principal motivation of his entering a plea of guilty?

MR. MOORE: I don't know his motivations now. I couldn't read his mind, but I do know this, I do know that as far as I was concerned it was *very minor consideration*, and I'm quite sure that we explained to him that the possibility of the death sentence being imposed was very remote, although we did say that there

3. Petition for certiorari was granted in this case June 23, 1969, and the case was placed on the summary calendar being set for argument immediately following Alford v. North Carolina; 395 U.S. 976, 89 S.Ct. 2146, 23 L.Ed.2d 764.

4. As pointed out by the Government's brief in the *Alford* case, the defendant stated that he was pleading guilty "be-cause he didn't want to run the risk of losing his life" and that the attorney had told him that "if I didn't enter a plea, I would surely get a death sentence". As the testimony clearly indicates in the case at bar, attorneys Moore and Widener continually maintained, based upon their past experience and the factual situation present, that the death penalty was "virtually nonexistent".

was a greater possibility of a life sentence.

Mr. Widener upon taking the witness stand testified as follows:

MR. MASON: From your recollection of the—all of the circumstances, including the evidence of the prosecution, from the time you were appointed by the court to represent Mr. Wilson and the date of trial, would you, in your judgment, state that the possibility of a death sentence as a result of a jury trial was the principal motivation for his entrance of a plea of guilty?

MR. WIDENER: I could not say. I just could not say, Mr. Mason, not meaning to imply that it was or was not. I just could not say.

MR. MASON: Do you have any reason to believe that was his principal motivation from any conversations he had with you?

MR. WIDENER: I have no reason to think so or to think that it was not. I just—I just don't know.

Given the overwhelming weight of evidence that counsel, through their respective investigations, had secured, it surely can be stated that there existed a sufficient basis upon which appointed counsel advised petitioner.

The Court of Appeals for the Sixth Circuit, in an opinion by Judge Cecil, denied petitioner's motion to vacate sentence rendered upon his plea of guilty to an offense of the Federal Kidnapping Act. Overman v. United States, 281 F.2d 497 (1960). In this case, which is very similar to the case at bar, the Court concluded that "To now set the sentence aside or even to require a hearing on the flimsy and indefinite claims made by the appellant would make a mockery out of court procedure, which permits a defendant to appear in court, admit his guilt and attempt to show mitigating circumstances." In Burgett v. United States, 237 F.2d 247, 251, certiorari denied, 352 U.S. 1031, 77 S.Ct. 596, 1 L.Ed.2d 599, a motion to vacate was denied without a hearing. The Court

said [in this case] that "a defendant, having been represented by competent counsel, having been given every opportunity and right afforded by the law and having entered a plea of guilty, may not, without some reasonable basis, come into court years later and repudiate his prior plea. It is not the intent of Section 2255 nor the meaning of United States v. Hayman, (342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232) to require a hearing upon the mere assertion that a prior plea was false. To so interpret the statute and the *Hayman* case is to say that every time a defendant desires to change his mind as to the reason for entering a plea a hearing must be held with the defendant present."

In the case at bar, the petitioner under Alford v. North Carolina, *supra,* has presented a "reasonable basis" for the granting of a hearing, (which was held on June 9th, 1969) however, the petitioner has still failed to demonstrate that his guilty plea was principally motivated so as to avoid the death penalty.

The Government's brief raises the question as to the retroactive application of the principles enunciated in United States v. Jackson. The Fourth Circuit did discuss this point in rendering the principal motivation test criteria in the *Alford* case.

The case at bar is somewhat similar to *Alford* in that both courts do not necessarily deal with any new factual allegations, but rather with a new development in the law under the *Jackson* decision. Petitioner has raised this point in his motion to vacate sentence and willingly the Court granted him a post-conviction hearing on such a claim. We are aware of the significance of Sanders v. United States, 373 U.S. 1, 16–17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963), wherein the Court stated that:

Even if the same ground was rejected on the merits on a prior application, it is open to the applicant to show that the ends of justice would be served by permitting the redeter-

mination of the ground. \* \* \* If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application. \* \* \* the foregoing enumeration is not intended to be exhaustive; the test is 'the ends of justice' and it cannot be too finely particularized.

■ Because petitioner has not submitted an application prior to this motion does not provide a sufficient reason to defeat his § 2255 motion, as it rests upon an "intervening change in the law" dealing with purely legal questions. To defeat petitioner's motion on the ground that a prior application hadn't been made would surely deny the Court the opportunity to ensure that the "ends of justice" are served.

Of course, should *Jackson* be held not to apply retroactively, as counsel for the government maintains, then petitioner cannot be granted relief. The Supreme Court has granted certiorari to Brady v. United States, supra and doubtless will discuss this very question. If however, the Supreme Court does grant retroactive application to *Jackson*, and either accepts the principal motivation test of *Alford*, or the totality of circumstances test of *McFarland*, the outcome in this case would not be affected, as Wilson has failed on both tests.

■ Thusly, this Court is of the opinion that throughout the trial and rehearing, petitioner Wilson was "intelligently" made aware of the charges against him, that the Court, under the direction of the presiding judges throughout the entire proceedings were extremely solicitious of petitioner's constitutional rights; and that the plea of guilty was voluntarily entered into without fear of being decreed the death penalty. Therefore, upon a thorough consideration of the trial court's record, the testimony given at the post-convic-

tion rehearing and the briefs entered by both parties, we conclude that for the foregoing reasons, petitioner's motion to vacate sentence under 28 U.S.C. § 2255 must be and is hereby denied, and it is so adjudged and ordered.

The clerk is directed to send a copy of this opinion and judgment to counsel of record.