**Mark Lee OVERMAN, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

**Civ. No. 1857.**

United States District Court
W. D. Tennessee E. D.

Sept. 24, 1969.

**238**

David Farmer, Jackson, Tenn., for petitioner.

Kemper B. Durand, Asst. U. S. Atty., Memphis, Tenn., for respondent.

## OPINION

ROBERT M. McRAE, Jr., District Judge.

Pursuant to 28 U.S.C. § 2255, Mark Lee Overman, pro se, filed a Motion to Vacate his life sentence. After reviewing the Motion to Vacate, the respondent's answer and the available part of the record of the movant's criminal case, and in the light of United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), this court concluded that an evidentiary hearing should be conducted and appointed counsel for the petitioner. At the hearing testimony was received and, by stipulation, the Clerk's files in the criminal case and all prior Motions to Vacate were made a part of the record in this proceeding.

The following are the findings of fact and conclusions of law of this court as they pertain to that hearing.

In 1953 movant plead guilty to a violation of 18 U.S.C. § 1201, which makes it an offense to knowingly transport any person in interstate commerce, who has been unlawfully seized or kidnaped. At the time the prescribed penalty was death, if the person had not been released unharmed and the jury so recommended. The alternative, if the death penalty was not imposed, was imprisonment for a term of years or for life.

As the basis for the violation the Government accused the movant with concealing himself in the rear of the victim's automobile while she was using the telephone in Humboldt, Tennessee. After the victim resumed her place in the car and when she had reached the suburbs of Humboldt, the movant arose and forcibly with a pistol took possession of the car. The Government further accused the movant with driving into Kentucky and there raping his kidnap victim. The movant was captured after a high speed automobile chase and a gun battle with the arresting officers.

This Motion to Vacate Sentence now before the court is the fourth such motion filed by this movant. In 1960, the Court of Appeals for the Sixth Circuit reviewed this court's decision rendered by the Honorable Marion S. Boyd on movant's third motion to vacate, which had been denied without an evidentiary hearing but upon a consideration of the transcript of the proceedings when the movant plead guilty to the charge. The Court of Appeals affirmed. Overman v. United States, 281 F.2d 497 (1960). The District Court found that the movant's guilty plea was voluntary and that movant had not been coerced into pleading guilty, either by the F.B.I. or by his attorneys, and further found that the movant had been ably represented by his court appointed counsel.

The movant again contends that his guilty plea was involuntary, but this time he grounds his motion upon United States v. Jackson, *supra,* wherein the Supreme Court held that the death pen-

alty clause of the Federal Kidnaping Act imposes an impermissible burden upon the exercise of the constitutional right of trial by jury. However, the court further held that the death penalty clause was severable from the remainder of the Act and therefore the remainder of the Act is not unconstitutional.

In the instant proceeding this court ruled that the issues to be determined at the evidentiary hearing would be limited to those matters which were relevant to the ruling in United States v. Jackson, *supra,* because all other matters concerning the voluntariness of the guilty plea of the movant had been heretofore determined.

In the evidentiary hearing the movant testified in support of his contentions. The movant testified that he was not guilty of the offense and that, in spite of a valid defense, he plead guilty primarily to avoid the possibility of the death penalty at the hands of the jury. Movant contends that prior to the interstate journey he had known the victim intimately and that the victim accompanied him from Tennessee to Kentucky secretly but voluntarily. He asserts that she publicly professed to the capturing officers and others that the journey was involuntary because she was a white woman and he was a Negro. Movant contends that he had a diary and a letter to corroborate his position in this regard and that there were witnesses in Arkansas who would do so. It should be noted that at no time has there been offered a diary, a letter or the names of any witnesses in support of movant's contentions.

At the hearing the respondent offered the testimony of W. R. Menzies, Jr., one of the two attorneys who represented the movant at the time of his guilty plea. Mr. Menzies explained the efforts that he and his co-counsel made in the investigation of the case. He specifically testified that there was no mention of a diary, or a letter, or the names of any witnesses to be used in behalf of the movant. In fact, Mr. Menzies testified

that movant never told his attorneys that he had known the victim previously. Counsel for the movant did, on their own initiative, undertake to investigate the background of the victim in the communities where she was known. This produced no beneficial evidence for the defendant. Counsel for the movant conferred with the United States Attorney at length and talked to Government witnesses concerning the strength of the case against the movant. They discovered that the movant had made oral confessions to agents of the F.B.I. In this regard, on rebuttal at the hearing, the movant testified that he had been beaten by F.B.I. agents to obtain the confession. Mr. Menzies testified at the hearing that the movant had admitted to his attorneys that he hid in the back of the car prior to the interstate journey and that he used a pistol in an exchange of gunfire at the time of his capture. In conferences with his attorneys, he neither admitted nor denied the rape. In this regard, it should be noted that the victim was taken to a hospital in Kentucky immediately after the capture of the movant, and that the Government had subpoenaed hospital personnel to testify concerning the condition of the victim immediately after her release.

Mr. Menzies further testified that he and his co-counsel conferred regularly with the movant and reported the results of their investigation from time to time. Mr. Menzies also testified that the movant conversed freely with them at the conferences and asked numerous questions. Counsel did explain that there was a possibility of the death penalty because that was the law at the time of the trial. The decision to change his plea to guilty was made by the movant immediately prior to the scheduled trial on a not guilty plea and after the Government had subpoenaed 25 or 30 witnesses to support its case.

At the hearing the respondent also offered the testimony of Edward N. Vaiden, the Assistant United States Attorney who had been assigned the criminal case of the movant. Mr. Vaiden testi-

fied the Government had a strong case against the movant. He further testified that the office of the United States Attorney concurred in the life sentence against the movant due to the unpleasantness of the trial to the victim and members of her family.

 As previously mentioned above, the Supreme Court in United States v. Jackson, *supra,* held that the death penalty provision of the Federal Kidnaping Act imposed an impermissible burden on the exercise of certain constitutional rights, but that such provision is separable and does not destroy the remainder of the Act. The court, however, recognized that the presence of the prescribed provision did not imply that every guilty plea was involuntary. On page 583 of 390 U.S., on page 1217 of 88 S.Ct. the Court stated:

"* * * Thus the fact that the Federal Kidnaping Act tends to discourage defendants from insisting upon their innocence and demanding trial by jury hardly implies that every defendant who enters a guilty plea to a charge under the Act does so involuntarily.[25]

"25. See Laboy v. New Jersey, D.C., 266 F.Supp. 581, 584. So, too, in Griffin v. State of California, 380 U.S. 609, [85 S.Ct. 1229, 14 L.Ed.2d 106], the Court held that comment on defendant's failure to testify imposes an impermissible penalty on the exercise of the right to remain silent at trial. Yet it obviously does not follow that every defendant who ever testified at a pre-*Griffin* trial in a State where the prosecution could have commented upon his failure to do so is entitled to automatic release upon the theory that his testimony must be regarded as compelled."

The Supreme Court recognized that the guilty plea is an indispensable tool of justice for it allows those whose guilt is clear and who have a desire to acknowledge it in order to spare themselves and their families the spectacle and expense of protracted courtroom proceedings. United States v. Jackson, *supra,* at p. 584, 88 S.Ct. 1209.

In Brady v. United States, 404 F.2d 601 (1968) the Court of Appeals for the Tenth Circuit reviewed a Motion to Vacate proceeding growing out of a guilty plea to the Federal Kidnaping Act. After reviewing all the facts the Court held:

"The finding of the trial court that the guilty plea was not made because of the statute but because of other matters is supported by substantial evidence and is binding on us. We are convinced that the appellant voluntarily pleaded guilty." *Id.* at p. 602.

The other matters referred to in the *Brady* opinion were his co-defendant's confession, his attorney's report of his investigation, the prospective testimony of Government witnesses and the knowledge that his co-defendant might testify against him.

 From all of the above, this court is convinced that the movant, Overman, voluntarily plead guilty because he was guilty and the proof against him was so overwhelming. Therefore, this Motion to Vacate Sentence under 28 U.S.C. § 2255 is denied.