**Frank WIRTH, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. No. B 578.**

United States District Court,
D. Connecticut.

Oct. 13, 1972.

Wynn & Atlas, New York City, for petitioner Frank Wirth; Jeffrey M. Atlas, New York City, of counsel.

Stewart H. Jones, U. S. Atty., D. Conn., for the United States; Leslie Byelas, Asst. U. S. Atty., of counsel.

OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION TO VACATE SENTENCE AND GRANT A NEW TRIAL.

LEVET, District Judge.*

The above-entitled petitioner, Frank Wirth, brings this petition for habeas corpus pursuant to 28 U.S.C. § 2255 to set aside his conviction after a jury trial and to grant a new trial on the ground that he was denied effective assistance of counsel in violation of the Sixth Amendment of the Constitution of the United States.

* Of the United States District Court for the Southern District of New York, sitting by designation.

On January 26, 1972 in the Federal District Court for Connecticut in Bridgeport, Connecticut, Wirth was convicted of receiving a stolen motor vehicle in violation of 18 U.S.C. § 2313.[1]

Wirth contends that because his attorney at the time of trial, one Warren Luedecker, represented other individuals allegedly connected with Wirth's case there existed a conflict of interest which materially affected Wirth's defense and which resulted in ineffective representation by counsel.

A brief reference to previous proceedings will help place in context Wirth's claim that he was denied his constitutional right to effective assistance of counsel.

On October 19, 1971 a Federal Grand Jury, sitting in Bridgeport, returned a one-count indictment charging Wirth with violating 18 U.S.C. § 2313. On January 18, 1972 this court heard arguments on defendant's motion for disclosure and production of the name of the informant for the government. The court orally granted the motion on the morning of January 19. On January 26, Wirth's trial was commenced and concluded on the same day. The jury returned a guilty verdict on the one count. On February 25, the court sentenced Wirth to a term of imprisonment of eighteen months and denied a motion for a new trial based upon a claim of newly-discovered evidence. On February 29, Wirth filed a notice of appeal from both determinations with the Clerk of the Court of Appeals for the Second Circuit. On June 26, 1972 Wirth's appeal was dismissed for failure to file a brief and appendix as ordered. On September 14, this court, sitting in Bridgeport, con-

ducted a hearing upon the present application.

After hearing the testimony of the parties, examining the exhibits, the motion papers and the Proposed Findings of Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Frank Wirth was indicted and convicted by a jury for his purchase, receipt and continued possession of a 1970 Cadillac automobile stolen in New York and transported to the State of Connecticut. Wirth was represented upon his indictment, at pretrial proceedings and trial proceedings by Warren Luedecker, an attorney of Trumble, Connecticut, to whom Wirth may have been referred by Leonard Wisniewski.[2] (SM 37–38, H10–13.)

2. At the trial under the indictment there was testimony that a 1970, dark green Cadillac, owned by the Torrington Finance Agency and leased to Fab Industries Incorporated, New York City, was stolen in New York on May 19, 1970. Special Agents of the Federal Bureau of Investigation working on a stolen car case first observed the stolen Cadillac at the Devon Esso Service Center, 25 Bridgeport Avenue, Milford, Connecticut. There was testimony that Wirth was issued a dealer's license by the State of Connecticut to deal in the buying and selling of used cars on behalf of the Devon Esso Service Center. F.B.I. agents secured a search warrant and after observing that the Cadillac had been moved from the Devon Esso Service Center to 302 Bond Street,

1. "Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. By stipulation the proceedings of the trial at which Wirth was convicted, in-

cluding the motion for a retrial, were made a part of this record. Any reference denoted by "SM" is to the stenographic minutes of the trial before this court on February 25, 1972. Any reference denoted by "H" is to the stenographic minutes of the hearing on this motion before this court on September 15, 1972.

Bridgeport (Wirth lived at 300 Bond Street), proceeded to search the automobile. There was testimony that the vehicle identification numbers located on the dash board and the engine block of the Cadillac had been changed. However, the F.B.I. had located an additional identification number hidden in the body of the car which had not been changed and which matched that belonging to the dark green Cadillac which had been stolen in New York. Subsequently, the F.B.I. impounded the car and interviewed Wirth. Wirth voluntarily turned over to the F.B.I. documents which he claimed pertained to buying the car. These documents consisted of a cancelled check payable to one Ronald Lambert, the alleged owner, and a New York State motor vehicle form used in transferring a New York State automobile. This form indicated that Lambert lived on East 123 Street in the Bronx, New York, and that the purchaser of the car was Devon Auto Sales of 25 Bridgeport Avenue, Devon, Connecticut. (Devon is a section of Milford.) There was further proof that the check issued by Wirth, drawn on the account of the Devon Esso Auto Sales, payable to Lambert was endorsed by Lambert and deposited in the account of Devon Esso Auto Sales. The transaction was a "washout." An F.B.I. agent further testified that he attempted to locate Lambert at the Bronx address but discovered that there was no such street in the Bronx. Wirth's apparent defense was that he had no idea that the car was stolen, the jury rejecting such as contrary to the overwhelming weight of the evidence. Wirth did not take the stand in his own behalf. (Ex. A.)

3. At the time that Luedecker represented Wirth upon his indictment and trial (i. e., from October 19, 1971 to January 26, 1972) Luedecker also represented Leonard Wisniewski in an unrelated indictment pending in the United States District Court in the District of Connecticut. (H 18–19.)

4. Gerald Kelly was the government's informer in the Wirth case. Kelly was not called as a government witness nor was he called as a defense witness. On three occasions in November and December of 1970 Luedecker represented Kelly who was charged in the Connecticut State Courts with operating "under the influence, evading responsibility, disorderly conduct, entering a false alarm and breach of peace." Luedecker closed the last of his office files on these cases on April 14, 1971. Luedecker never represented Kelly in any matter involving interstate theft of automobiles. When Kelly was revealed as the government's informer, Luedecker immediately informed Wirth of this. (H 27–30, 51.)

5. During Wirth's trial Luedecker made no effort to reach Kelly. However, prior to trial Luedecker had attempted to contact Kelly by telephone in Florida but was unsuccessful. Kelly was not called as a witness at Wirth's trial. (H 31.)

6. Several conferences between Luedecker and Wirth were held regarding Wirth's indictment. On one such occasion Luedecker did discuss with Wirth a possible conflict of interest between Wirth and Wisniewski, advising Wirth that he would continue to represent Wirth so long as there was no conflict with any other client Luedecker may have represented. (H 24–25, 41.)

7. During the period after Wirth's indictment but before Wirth's trial, conferences were held between Wirth and Luedecker, in the presence of Wisniewski, regarding Wirth's case. H 20–21, 39.) It is Wirth's contention that during one of these conferences Luedecker learned that the stolen automobile, which was the subject of Wirth's indictment, had originally come from Leonard Wisniewski, through Gerald Kelly, and another person. (H 41–45.)

8. In summary, I find that the petitioner Wirth has failed to prove that he

was inadequately represented at trial and pretrial stages by reason of the fact that Luedecker also represented Wisniewski and Kelly in unrelated matters.

## DISCUSSION

Plaintiff in this action, Frank Wirth, is a prisoner confined to the Federal Correctional Institution at Danbury, Connecticut pursuant to a sentence of eighteen months imposed on him after his conviction in the District Court for the District of Connecticut after a jury trial.

The essential issue raised on this Section 2255 motion is whether petitioner was denied his Sixth Amendment right to the effective assistance of counsel during the trial and pretrial stages. It is Wirth's claim that his right to the effective assistance of counsel was abrogated by virtue of his trial counsel, Warren Luedecker, representing Leonard Wisniewski and Gerald Kelly, individuals whose interests conflicted with Wirth's.

■■■ Courts have long recognized the principle that effective assistance of counsel is lacking if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where counsel's full talents are impaired by commitments to others which make his services to the accused inadequate. United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952); Glasser v. United States, 315 U.S. 60, 62 S. Ct. 457, 86 L.Ed. 680 (1941); United States v. Bentvena, 319 F.2d 916 (2d Cir.), cert. denied sub nom. Galante v. United States, 375 U.S. 940, 84 S.Ct. 346, 11 L.Ed.2d 271 (1963). But before this court will vacate a conviction there must be "a 'total failure to present the cause of the accused in any fundamental respect.'" United States ex rel. Marcelin v. Mancusi, 462 F.2d 36, 42 (2d Cir. 1972), quoting from Brubaker v. Dickson, 310 F.2d 30, 39 (9th Cir. 1962),

cert. denied, 372 U.S. 978, 83 S.Ct. 1110, 10 L.Ed.2d 143 (1963).

■■ The burden of proof is on the petitioner to sustain the allegations of his habeas corpus petition. As to the claim of alleged inadequacy of counsel, the Second Circuit has established "independently stringent requirements and uniformly have adhered to them." United States ex rel. Marcelin v. Mancusi, supra at 42, citing United States ex rel. Crispin v. Mancusi, 448 F.2d 233, 237 (2d Cir.), cert. denied, 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 288 (1971); United States ex rel. Scott v. Mancusi, 429 F.2d 104, 109 (2d Cir. 1970), cert. denied, 402 U.S. 909, 91 S.Ct. 1385, 28 L. Ed.2d 651 (1971); United States v. Katz, 425 F.2d 928, 930–931 (2d Cir. 1970); United States v. Silva, 418 F.2d 328, 331–332 (2d Cir. 1969); United States v. Currier, 405 F.2d 1039, 1042–1043 (2d Cir.), cert. denied, 395 U.S. 914, 89 S.Ct. 1761, 23 L.Ed.2d 228 (1969); United States ex rel. Maselli v. Reincke, 383 F.2d 129, 132 (2d Cir. 1967); United States v. Horton, 334 F. 2d 153, 155 (2d Cir. 1964); United States v. Garguilo, 324 F.2d 795, 796–797 (2d Cir. 1963); United States v. Gonzalez, 321 F.2d 638, 639 (2d Cir. 1963); United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950).

As Judge Timbers appropriately points out in *Marcelin*, the stringent requirements to which the Second Circuit has continued to adhere for establishing inadequacy of counsel were well articulated by Judge Smith nearly twenty-three years ago in United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949):

"* * * The proof of the efficiency of such assistance lies in the character of the resultant proceedings, and unless the purported representation by counsel was such as to make the trial a farce and a mockery of jus-

tice, mere allegations of incompetency or inefficiency of counsel will not ordinarily suffice as grounds for the issuance of a writ of habeas corpus * * * [citations omitted].

"A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice [citations omitted]. * * *"

Applying these standards to the instant case, petitioner's claim of alleged inadequacy of counsel, viewed in the light most favorable to petitioner, may be summarized as follows:

■ Wirth's trial attorney, Luedecker, did indeed represent Wisniewski and Kelly in unrelated matters. These representations alone do not, however, create a conflict of interest. One attorney can certainly represent clients, all of whom know each other, in unrelated matters and still render adequate professional service to all. How then was Wirth denied adequate counseling?

It is Wirth's contention that Luedecker had his interests subordinate to Wisniewski's. At the hearing Wirth testified: "And Leonard Wisniewski blew his top and told Warren Luedecker that the car originally came from him. That he [Wisniewski] was paying him [Luedecker] to do what he wanted and not to do anything else." (H 42.)

If it is true that Wirth was sacrificed in order not to implicate Wisniewski in any possible criminal proceeding, then effective assistance of counsel was lacking. However, the proof (other than Wirth's self-serving statements) does not bear out such a contention. It has not even been remotely shown that Wisniewski was to be protected from prosecution or incrimination at all or any costs—even the freedom of Wirth.

■ Besides Wirth's statements there is no proof that Wisniewski or Kelly

possessed the car. But assuming that the stolen Cadillac came from Wisniewski through Kelly, this is insufficient to establish a conflict of interest necessitating a new trial. Wirth, Wisniewski and Kelly might, perhaps, all be participants in the same criminal scheme. However, more than one person can be connected to the theft of the same car. Even if Wisniewski were called as a witness and testified that the Cadillac came from him, this does not exonerate Wirth from receiving stolen property. An attorney can represent or know all the culprits and still render effective representation. Wirth has not sustained his burden that Luedecker did otherwise.

At no point during Wirth's trial did he complain about his counsel or request that Luedecker be relieved.[3] It is all too often true that in retrospect what was originally thought to be a good defense may prove to be improvident. It is at the time of trial when the measure of the adequacy of counsel must be made.

Wirth vigorously maintains that Gerald Kelly should have been called as a witness but fails to show how his defense would remotely benefit from Kelly's testimony. On what is presently before this court, at most Kelly would have testified that the car originally came from Wisniewski. This again does not exonerate Wirth from unlawfully receiving stolen property. Furthermore, there is no reasonable evidence to support the theory that Kelly would have testified that the Cadillac came from Ronald Lambert whom the jury obviously concluded to be a fictitious person.

Wirth also maintains that he was denied the opportunity to take the stand in his own behalf "because I wanted to tell him just the way I got the car." (H 51.) Again there is no indication that Wirth testifying would have altered the outcome of the trial.

To call an informer as a witness or to take the stand in one's own behalf are

---

3. It is interesting to note that Luedecker represented Wirth on a divorce matter after he first represented him on the criminal case. (H 54.)

**1142**

considerations not to be made lightly. An informer may turn out to be the most devastating witness against a defendant and to testify in one's own behalf may expose one to untold perils, especially if the defendant—as the case is here—has prior felony convictions.

Unfortunately, trial tactics originally conceived as the best defense may in "the bright glare of hindsight" prove to be a mistake but such does not mean that counsel was inadequate.

Chief Judge Friendly very well expressed this consideration in United States v. Katz, 425 F.2d 928, 930 (2d Cir. 1970):

> "Determination of the effectiveness of counsel cannot be divorced from the factual situation with which he is confronted. When, as here, the prosecution has an overwhelming case based on documents and the testimony of disinterested witnesses, there is not too much the best defense attorney can do. If he simply puts the prosecution to its proof and argues its burden to convince the jury beyond a reasonable doubt, the defendant may think him lacking in aggressiveness, and surely will if conviction occurs. If he decides to flail around and raise a considerable amount of dust, with the inevitable risk that some may settle on his client, the defendant will blame him if the tactic fails, although in the rare event of success the client will rank him with leaders of the bar who have used such methods in some celebrated trials of the past." See *Marcelin*, supra at 43, n. 12 of 462 F. 2d.

### CONCLUSION OF LAW

■ For the reasons stated herein the petitioner Frank Wirth has failed to sustain his burden of proving inadequacy of counsel. Therefore, his petition to vacate sentence and grant a new trial pursuant to 28 U.S.C. § 2255 is denied.

So ordered.